CHARLES N. NELSON and others, Executors, and others vs. EMIL MUNCH and others.

October 4, 1881.

**Appeal by Joint-defendants—Modification of Judgment as to one or more.**—Upon a joint appeal by several parties, this court may reverse, affirm or modify the judgment or order appealed from as to any or all of the parties. Gen. St. 1878, c. 86, § 5.

**Surety—Released by Laches of Creditor in losing Collaterals.**—Any laches by a creditor in the care or management of collateral securities will, if loss ensues therefrom, discharge a surety pro tanto. This follows from the right of a surety, when he pays the debt of his principal, to be subrogated to the rights of the creditor as to all collaterals held by him for the payment of the debt. This right of subrogation implies an obligation on the part of the creditor to do no act by which the exercise of that right will be frustrated.

**Same—Facts of This Case Considered.**—The facts of this case considered, and held, inasmuch as the other defendants were mere sureties for Emil Munch, that it constituted laches on the part of the creditor Scheffer to permit the following collaterals, received by him from Emil Munch as security for the payment of his debt, to be appropriated and used by Munch & Nelson for purposes other than the payment of the debt,—to wit, logs of the value of $500, sawed lumber of the value of $12,400, and proceeds of real estate to the amount of $2,400,—and that the court below erred in not giving the defendants, other than Emil Munch, credit for these amounts.

The defendant Emil Munch was treasurer of the state of Minnesota from January 1, 1870, to January 1, 1872, and among his official bondsmen were the other defendants and Charles Scheffer. During his term of office Munch became indebted to the state in the sum of $164,709.55. To make this amount good, Munch and the other defendants made and delivered their joint promissory notes for the whole amount to his successor in office, by whom these notes were transferred to Charles Scheffer, who paid therefor their full value. Emil Munch and Gustav Munch, another of the defendants, to secure Scheffer for this payment, transferred to him, by absolute conveyances,

a large amount of real and personal property, with the verbal agreement that he should sell and dispose of the same as advantageously as possible, and apply the proceeds to the payment of the notes. On April 9, 1873, Scheffer executed a declaration of trust to Emil and Gustav Munch, setting forth the uses and purposes of the transfers by them to him, and stating the indebtedness to be about the sum of $120,-000. The indebtedness had been reduced by sales of a portion of the property transferred to Scheffer, and by moneys paid by the Munches, to this amount, which was evidenced by fifteen promissory notes.

This action was commenced on these notes by Charles Scheffer, in the district court for Ramsey county. Scheffer dying, his executors, widow and heirs were substituted as plaintiffs. The action was tried, without a jury, by *Simons*, J., who ordered judgment for plaintiffs for the amount of the original indebtedness, less payments made by proceeds of sales of the trust property, and by moneys paid by the Munches, and directing the appointment of a trustee to carry out the objects of the trust. Judgment was entered accordingly and all the defendants jointly appealed.

*H. J. Horn*, for appellants.

*E. C. Palmer*, for respondents.

MITCHELL, J. This action was brought upon fifteen promissory notes, executed jointly by defendants. The real matters in litigation in the action are to be found in the answers, which are in the nature of bills in equity, alleging that the defendants Emil Munch and Gustav Munch conveyed and transferred to Scheffer large amounts of real and personal property, in trust, to apply the proceeds in payment of these and other notes of the same tenor, executed at the same time; that this property largely exceeded in value the amount of the indebtedness secured; that Scheffer has realized out of this property, in money, towards payment of this debt, over $110,000; that in addition thereto he has wrongfully misappropiated the trust property to the value of over $80,000 and that he has still in his possession, and undisposed of, property of the value of over $83,000, and asking an accounting, and that, after applying sufficient of the property to pay the debt, the plaintiffs be adjudged to reconvey the

remainder to the defendants Emil and Gustav Munch, and, for that purpose, the widow and heirs-at-law of Scheffer were, on motion of defendants, made parties plaintiff to this action. The judgment is in the nature of a decree, adjudging how much has been realized by Scheffer out of this trust property, how much thereof still remains undisposed of, and what balance remains due on the notes in suit, and appointing a receiver to take charge of the remaining property, convert it into money, and apply the same, so far as necessary, to the payment of the balance due on the notes in suit, and return the remainder, if any, to defendants. All of the defendants unite in an appeal from this judgment. As this appeal is brought from the judgment entered upon the findings of the court, without any "case" or bill of exceptions, the only question for determination is whether the findings of fact and the pleadings sustain the judgment.

The findings are very voluminous, and are rather in the nature of a statement of the evidence than of the ultimate issuable facts· Hence, on some points, it is rather difficult to determine just what specific facts the court has found; but so far as here material the substance of these findings, as we understand them, is as follows: The notes in suit are a part of a large number of notes of like tenor executed at the same time, November 27, 1872, by the same parties, amounting in all to $164,709.55. This debt for which these notes were executed was primarily that of Emil Munch, the other defendants executing them merely as sureties for him; a fact known to Scheffer when he received the notes. At the time these notes were executed, Emil Munch was engaged in Lakeland, in this state, in the business of merchandising, manufacturing lumber, and logging, and owned a large amount of personal property used and employed in that business, consisting of merchandise, logs, sawed lumber, book-accounts, and bills receivable. The logs were of the value of $500, the sawed lumber $12,400, the book-accounts and bills receivable amounted together to $27,565.38; but how much of this was book-accounts, and how much bills receivable, is not found, and nowhere appears. Emil Munch was also owing debts, contracted in this business, to the amount of $15,150.95, exclusive of $10,905.48 due the state of Minnesota for stumpage. In December, 1872, soon after the

execution of these notes, it was mutually agreed between Emil Munch, Charles Scheffer, and one Charles N. Nelson, that, for the purpose of raising money for the payment of these notes, the said business, as above stated, should thereafter, without limitation as to time, be continued and carried on in all its branches, including the collection of said accounts and bills receivable, by said Emil Munch and Charles N. Nelson, under the copartnership name of Munch & Nelson; that all of the above-mentioned property should be used and employed in said business, together with such other property as said firm should from time to time purchase for the purposes of said business; that said Nelson should be paid for his services therein from the proceeds of said business the sum of $4,000 per annum; that all the expenses of said business should be paid out of the receipts thereof, and that the moneys arising from said business, including collections on the aforesaid notes and accounts and bills receivable, after deducting therefrom all the expenses of the business and all sums paid on said prior indebtedness of Emil Munch, should be applied towards payment of the above-mentioned notes held by Scheffer. The business was carried on under this agreement till March 8, 1875, when the copartnership of Munch & Nelson was dissolved, and thereafter the said business was continued and carried on for the same purpose by Nelson alone, with the consent of Emil Munch, until the trial of this action, January 16, 1877. During the time this Lakeland business was thus carried on, the receipts were $319,507.97, and the disbursements $349,956.36. It does not appear how much, if any, property connected with this Lakeland business yet remains in the hands of Nelson, nor does it appear how this business stood at any time intervening December, 1872, and January, 1877, or whether it was conducted at a profit or a loss, although it is, perhaps, fairly inferable from the fact that the disbursements largely exceeded the receipts, and that nothing has ever been realized out of it towards payment of the Scheffer notes, that it was run at a considerable loss. No fraud or collusion in the management of it is found.

During the months of March, April and May, 1873, Emil Munch and Gustav Munch, severally, by a number of conveyances, conveyed and transferred to Scheffer large amounts of real and personal prop-

erty, for the purpose and upon the terms then verbally agreed on by the parties, and which were afterwards expressed and set forth in an instrument in writing, in the nature of a declaration of trust, executed by Scheffer to Emil Munch and Gustav Munch. Although the terms of this trust were then verbally agreed on, they were not reduced to writing until August 9, 1873, as hereinafter stated. It also appears that at the time this property was thus transferred to Scheffer, and the terms of the trust agreed on, the whole lot of notes, amounting to $164,709.55, of which the fifteen in suit were a part, and which constituted one entire debt to that amount, were still held by Scheffer and were wholly unpaid. Among the property thus transferred by Emil Munch to Scheffer in the spring of 1873, under the terms of this trust, were the logs, sawed lumber, and book-accounts above referred to as connected with the Lakeland business. It will be thus observed that, under this subsequent arrangement in the spring of 1873, these three items of property were taken out of the general business at Lakeland, and placed in the same category as the real estate conveyed by Emil and Gustav Munch to Scheffer about the same time. It will also be observed that the bills receivable were not included in these transfers. Why these three items were thus segregated from the other property connected with the Lakeland business, or why the bills receivable were not included in the book-accounts, does not appear. But so the court finds the facts to be, as we construe the findings. It also appears that Scheffer never appropriated the proceeds of these logs, sawed lumber, or book-accounts towards payment of these notes, but allowed the whole thereof to be absorbed and used by Munch & Nelson, in the general Lakeland business.

After this real and personal property had been thus conveyed to him in the spring of 1873, and before the terms of the trust on which he received it were reduced to writing on the 9th of August, Scheffer sold certain portions of the real property, and realized therefrom over $27,000, which, together with other moneys which he had received from the Munches, he applied in payment of part of the notes of $164,709.55, then held by him against defendants. This sum thus applied paid all of these notes, except the fifteen in suit, which, with principal and interest, amounted to about $120,000. The other notes

thus paid he returned to defendants as cancelled and satisfied prior to August 9, 1873. On this last date, Scheffer executed in writing, to Gustav and Emil Munch, the declaration of trust above referred to, the terms of which, as before stated, had been verbally agreed on in the spring previous, at the time of the transfer of the property. This instrument, so far as here material, is in substance as follows:

After reciting that Emil Munch was indebted to him in the sum of $120,000, and was desirous of raising money to pay the same, and for that purpose had lately conveyed to him large amounts of real and personal property, the value and proceeds of which it was believed would exceed the amount required to liquidate said debt, and that it was understood between the parties that this property was not to belong to or be disposed of by Scheffer except to the extent necessary to pay this indebtedness and expenses, and that the remainder should be reconveyed to said Emil Munch, this instrument proceeds thus: "Now, therefore, in consideration of the premises, the said Charles Scheffer, for himself, his heirs and legal representatives, doth hereby covenant and agree to and with the said Emil Munch, his heirs and assigns, that he, the said Charles Scheffer, will immediately, and as soon as proper and practicable, proceed to sell and dispose of, on such terms and for such price as to him, in the exercise of a reasonable judgment, shall seem meet, so much of said property as shall be necessary in order to fully liquidate and discharge said indebtedness, with interest and reasonable expenses, and promptly and faithfully apply the proceeds arising out of and realized from such sales to that purpose and no other, and that, whenever said indebtedness, interest, costs and expenses shall have been fully paid and satisfied, he will reconvey and transfer any balances or portion of said property, not sold or disposed of, unto the said Emil Munch, his heirs or assigns, upon reasonable request of the party entitled thereto." Then follow similar recitals and covenants with Gustav Munch in reference to the property conveyed by him.

The description contained in this instrument, of the property purporting to be covered by this trust, includes the pine logs, sawed lumber, and accounts above referred to; also all of the real estate previously conveyed to Charles Scheffer by the Munches, including that

which had been already sold, and the proceeds applied by Scheffer in payment of a portion of these notes, as above stated. The court also finds that the indebtedness mentioned in this instrument is the fifteen promissory notes upon which this action was brought. The court also finds that on the 10th day of November, 1874, Scheffer sold and conveyed to Nelson certain tracts of this real estate, thus held in trust, for $2,400, and allowed Munch & Nelson to use the same in the Lakeland business.

In ascertaining the amount still due plaintiffs on these notes, the court below gave the defendants no credit on the fifteen notes in suit for (1) the $27,000, proceeds of property sold by Scheffer prior to August 9, 1873, and by him applied in payment of the other notes of the same lot; (2) the $2,400, proceeds of the real estate sold to Nelson, and used by him and Emil Munch in the Lakeland business; (3) the logs, sawed lumber, and book-accounts arising out of the Lakeland business, but included in the trust of August 9, 1873. And, as these constituted the principal grounds of error assigned by the appellants, we will consider them in order.

Before considering these questions it will become necessary to consider a question of practice raised by respondents. All the defendants unite in a joint appeal. From the statement of facts already given, it is evident that the defendant Emil Munch has no ground of complaint; that as to him the judgment of the court below is correct. If any error has been committed, it is only against the other defendants, who were mere sureties for Emil Munch, their codefendant. The respondents urge that, the appeal being joint, no error can be assigned which is not common to all the appellants, claiming that it is analogous to a joint exception by two defendants taken on the trial to a ruling which is erroneous as to only one of them. We do not think the two cases are at all analogous. Upon appeal this court may reverse, affirm or modify the judgment or order appealed from as to any or all of the parties. Gen. St. 1878, c. 86, § 5. See, also, *Ricketson* v. *Richardson*, 26 Cal. 149; *Montgomery County Bank* v. *Albany City Bank*, 7 N. Y. 459; *Giraud* v. *Beach*, 4 E. D. Smith, 27.

We now turn to the consideration of the grounds of error assigned by the appellants; and, *first*, we think the court was correct in refus-

ing to give them credit upon the notes in suit for the $27,066.66, proceeds of the trust property sold by Scheffer prior to August 9, 1873, and by him applied on the other notes of the same lot. The appellants had already received the full benefit of this fund, and the injustice of giving them credit for it a second time is manifest. The appellants rely on the fact that the instrument of August 9, 1873, includes this property which had been previously disposed of by Scheffer, and on the additional fact that the court finds that the indebtedness mentioned in that instrument, to the payment of which the property was to be applied, was the fifteen notes on which this action is brought. It is quite apparent from the history of the transaction what the intention of the parties was, and how this declaration of trust was drawn in its present form. When the property was conveyed to Scheffer, in the spring, it was evidently designed to secure the entire $164,709.55. But, in the mean time, part of the property was sold, and part of the debt paid with the proceeds, before the terms of the trust were reduced to writing. When this was done, in the following August, in stating the amount of the indebtedness, the parties, by way of recital, refer simply to the balance remaining due at that time, but omit to state the fact that a part of the property had already been sold and applied in accordance with the terms of the original trust. But it is sufficient answer to the position now taken by appellants, that, according to any reasonable and fair construction of their own answers, they themselves allege and admit that this property was conveyed and transferred in trust to secure the entire sum, including the other notes as well as those in suit. This is clearly the theory upon which they drew their pleadings. · It is quite apparent, too, that this was the theory upon which the case was tried. The court evidently so understood it, and in finding that the indebtedness referred to in the declaration of trust was the fifteen notes in suit, he intended merely to identify the debt, and never had it in mind to limit the trust under which the property was conveyed to these fifteen notes. In fact the question was not in issue under the pleadings.

2. We think the court erred in not crediting the defendants, other than Emil Munch, with the $2,400 realized by Scheffer out of the

trust property, November 10, 1874, but by him permitted to be absorbed by Munch & Nelson in the "Lakeland business." This property was held by him as collateral security from Emil Munch for the payment of a debt for which these other defendants were sureties. It is wholly immaterial that Scheffer himself derived no benefit from it, or that the property originally belonged to Emil Munch, and that the other defendants might not have been instrumental in causing the security to be placed by their principal in the hands of the creditor. It is a well-settled rule of equity that any laches by the creditor in the care or management of collateral remedies or securities, if loss ensues, will discharge the surety *pro tanto;* that is, so far as he is actually damnified. This rule follows from the right of subrogation on the part of the surety. When a surety pays the debt of his principal, he is entitled to be subrogated to the rights of the creditor to all collaterals held by him for the payment of the debt. This right of subrogation implies an obligation on the part of the creditor to keep it unimpaired; and if this duty is violated, the loss must be borne by him who is in default. In short, the equity of a surety depends on the right of subrogation, and the consequent duty of the creditor to do no act by which the exercise of that right may be frustrated. It may arise whenever one is liable in person or estate for a debt which ought in equity and good conscience to be discharged by another. By allowing Munch & Nelson to use this $2,400 of the collateral security in the Lakeland venture, Scheffer, to that extent, defeated this right of subrogation on the part of Emil Munch's sureties, and they are therefore, *pro tanto,* relieved.

3. For the same reasons, we think the court erred in not giving the defendants, other than Emil Munch, any credit for the logs of the value of $500, and the sawed lumber of the value of $12,400, originally belonging to the Lakeland business, but afterwards transferred to Scheffer by bills of sale, in March, 1873, in trust for the payment of the debt, on the same terms as the real estate conveyed to him about the same time. The agreement under which this Lakeland business was put into the hands of Munch & Nelson, in December, 1872, created no liability on the part of Scheffer, in the absence of fraud or collusion in its management, unless some profits were made

out of it, applicable, by the terms of the agreement, towards payment of these notes. It does not appear that there were any such profits. But, according to the findings of the court, these logs and this sawed lumber were subsequently transferred specifically, by bill of sale, to Scheffer, in trust to be sold and the proceeds applied in payment to these notes. This transfer took the property out of the general business at Lakeland, and made it the duty of Scheffer to Emil Munch's sureties to apply the proceeds in payment of these notes, and he had no more right thereafter to allow it to be absorbed in other business than he would have to do so with any other security held by him. The same would be true of the book-accounts, if there were sufficient facts found on which to charge him. But it nowhere appears how much these accounts amounted to, or how much was realized from them, separate from the bills receivable which were not transferred nor included in the trust. The defendants are the appellants, and, when they allege error, the burden is upon them to make it appear affirmatively. If the findings were either incorrect or incomplete, it was their duty to move to have them amended, if they designed to appeal on the ground that the judgment was not sustained by the findings.

The defendants also claim that they should have been credited with an item of $9,034.82, derived from pine lands which went into the Lakeland business. It is suggested that this was stumpage from the lands covered by the trust. It is sufficient to say that this fact nowhere appears. There is nothing to show that this was any part of the proceeds of the trust property.

Our conclusion, therefore, is that the judgment of the court below should be in all things affirmed as to the defendant Emil Munch, but as to the other defendants it should be modified by allowing them the following credits in addition to those allowed by the court below, to wit: As of date August 9, 1873, $500, the value of logs; $12,400, the value of sawed lumber; and as of the date of November 10, 1874, $2,400, proceeds of real estate sold to Nelson.

Cause remanded, with directions to modify the judgment in accordance with the foregoing opinion.