BANKERS SURETY COMPANY, Appellant, v. HARRIET C. LINDER, CHARLES D. LEGGETT, as Executor of the Estate of JOHN LINDER, deceased; NANCY RUDDELL, D. H. KING, ARTHUR L. OSTRANDER, GLADDIE M. OSTRANDER; THOS. W. HANNAH, as Clerk of the District Court of Jefferson County, Iowa; B. W. GARRETT, as Clerk of the Supreme Court of Iowa, Appellees.

**Suretyship:** SUBROGATION. While as a general rule a surety can not be subrogated to the rights of a creditor until he has paid the creditor's debt, still a court of equity has power to protect the rights of the surety who has been asked to pay the debt by a proper decree.

**Same:** NECESSITY OF PAYMENTS: REFUSAL: EFFECT. Where a creditor was given judgment against his debtor and the same was made a lien on any interest the debtor had in certain land, and the surety on the debtor's suspersedeas bond not only offered to pay the judgment on the bond rendered on appeal, provided its right of subrogation was protected, but before judgment was rendered against the debtor, made a tender of the amount and offer of payment provided the creditor would assign the judgment, the creditor was not justified in refusing the same on the ground that it would prejudice her individual right in the land or that of others under an alleged prior deed from the judgment debtor, and such refusal relieved the surety from paying the judgment until its right of subrogation was protected by proper decree; as the right of subrogation depends upon no request or contract of the debtor, but is entirely dependent upon the relations of surety and creditor.

**Same:** RIGHTS OF SURETY. By performing the obligation of suretyship the debt is discharged as respects the creditor but is kept alive as between all of the parties for the purpose of enforcing the rights of the surety.

**Same:** RELEASE OF SECURITIES: EFFECT. Upon payment of the debt a surety is entitled to subrogation to all the securities held by

the creditor for its payment, from whatever source obtained; and if by act or conduct he releases the securities, or makes them unavailing to the surety, the surety is to that extent relieved.

**Same:** RIGHTS OF CREDITOR AFTER PAYMENT. After a creditor receives payment or its equivalent in equity, he has no right to interfere with any disposition of the judgment which the court makes between the defendants, or the surety and the principal debtor or a stranger to the litigation.

**Same:** APPEAL: GROUNDS FOR REVERSAL. Where a surety was entitled, before paying the judgment against it, on affirmance of the principal judgment, to a decree establishing its right to subrogation and to an assignment of the judgment, the dissolution of a temporary injunction in a suit to secure subrogation and an assignment of the judgment will be reversed, for the purpose of relieving it of liability on the bond, although in the meantime it had been compelled to make an involuntary payment of the judgment against it.

**Same:** ENFORCEMENT OF RIGHTS: JURISDICTION. Where the appellate court, on affirmance of the principal judgment, rendered judgment against the surety on the supersedeas bond, the district court had jurisdiction of a suit by the surety to protect its rights to subrogation before paying the principal judgment.

**Same:** ADJUDICATION. Upon affirmance of the principal judgment the appellee is entitled to judgment against the surety on the supersedeas bond, and the entry of such judgment is not an adjudication of the right of the surety to subrogation, or any of the questions which may be involved in a trial of that right, but it may thereafter enforce its right by suit in equity, or under the statute providing for subrogation.

**Fraudulent conveyances:** INJUNCTION: DISSOLUTION. In a suit to set aside a deed on the ground of forgery the plaintiff is entitled to an injunction restraining a disposition of the land pending the litigation; for even though the filing of the petition might operate as a *lis pendens* the plaintiff might be compelled to bring another action against a purchaser. And where fraud is alleged the filing of an answer in denial is not sufficient ground for dissolving a writ.

**Suretyship:** RIGHT OF SUBROGATION. Where one appeals from a judgment which was made a lien upon certain land, and upon affirmance of the judgment the plaintiff on motion also obtained judgment against the surety on the supersedeas bond, the original judgment was not merged in the latter so as to extinguish

the lien, so far as the surety is concerned, but the right of subrogation will be preserved to the surety.

Subrogation: EXTENT OF RIGHTS ACQUIRED. A surety acquires no greater right by subrogation than the creditor had; so that where the judgment against the debtor was made a lien upon certain real estate it would only affect the interest of the debtor, and by subrogation of the surety any interest therein of the creditor would not be affected.

*Appeal from Jefferson District Court.*—HON. F. M. HUNTER, JUDGE.

TUESDAY, SEPTEMBER 24, 1912.

SUIT in equity to enjoin the collection of a judgment, for a decree of subrogation, and for an order enjoining the transfer of certain lands pending the action. A temporary injunction and restraining order was issued, which, upon defendants' motion, was dissolved, and plaintiff appeals.— *Reversed* and *remanded.*

*Boardman & Lawrence,* for appellant.

*McNett & McNett* and *Chester W. Whitmore,* for appellees Linder et al.

*Leggett & McKemey,* for Chas. D. Leggett, executor of the estate of John Linder, deceased.

DEEMER, J.—John Linder, now deceased, was at one time the husband of Harriet C. Linder. Mrs. Linder had had previous matrimonial experiences, and as a result had four children by former husbands. Some time in the year 1908 she brought suit for divorce against her then husband, John, and in that action claimed title to 495 acres of land in Jefferson county, which stood on the records in the name of John Linder. Upon the trial of that case, decree of

divorce was refused; but Mrs. Linder was awarded, for separate support and attorney's fees, a judgment of something like $2,000. John Linder was decreed to have vested interest in the land, and the judgment in favor of the wife was made a special lien upon the land. Mrs. Linder's children, although not made a party to the action, attended the trial, and all testified that John Linder had agreed to convey the land to their mother. John Linder appealed from this decree to this court, and, representing that he owned all the land in controversy in the suit, which statement the record confirmed, induced the plaintiff, the Bankers' Surety Company, to sign a supersedeas bond for him. The decree was rendered some time in the year 1909. John Linder died in April of the year 1910, while his appeal was pending, and within a few days after his death Harriet C. Linder and her four children, who are all made parties to this suit, produced and filed for record a deed for all the land in controversy purporting to have been made and executed some time in the year 1903. This deed, on its face, conveyed all the land in controversy to Mrs. Linder's four children. No one ever heard of this deed, unless it be the notary who acknowledged it during the life of John Linder; and no one testified or claimed, upon the hearing of the divorce case, that there was such a deed conveying the land to these defendants. In due course the appeal taken by Linder was disposed of in this court, resulting in an affirmance of the decree of the lower court. Thereafter Mrs. Linder filed a motion in this court for judgment against the surety company on the supersedeas bond. This was resisted by the surety company, unless Mrs. Linder assigned her judgment to said company in order that it might be subrogated to all of her rights. The motion for judgment against the surety company and against the executor of the estate of John Linder, he (Linder). having died pending the appeal, was sustained, and judgement rendered here, which provided that "this judgment shall be

without prejudice to said surety, the Bankers' Surety Company, to hereafter assert and enforce in any appropriate proceedings whatever right, if any, by way of subrogation or otherwise, it may have or be entitled to, as such surety, growing out of its obligation under the supersedeas bond or payment of this judgment." Thereupon the surety company filed a motion here for a special execution, enforcing its right of subrogation to Mrs. Linder's judgment, which was made a lien upon the land; but this motion was overruled. The order, however, contained this proviso, "without prejudice to any proceedings which it may institute in the proper court." The surety company then went into the district court of Jefferson county, from which court the original appeal came, with this action, which is to secure an order of subrogation to Mrs. Linder's rights under her judgment against John Linder, for an injunction to preserve the *status quo* until the final hearing, for an injunction against the children of Mrs. Linder to prevent their disposition of the lands pending the determination of the action, for a decree finding that the deed to these children was a forgery, or, if not a forgery, a fraud upon plaintiff's rights, and for a decree finding that the judgement was released, because Mrs. Linder, by her conduct, released the lien of her judgment against the land, from which the appeal was taken, and destroyed the security to which it, as a surety, was entitled to have from the original creditor. Other relief was also asked, which need not at this time be stated.

A temporary injunction issued as prayed. Defendants subsequently appeared and filed answer, in which they denied that the deed was either forged or fraudulent, and at the same time moved to dissolve the temporary writ of injunction, because the orders made by this court in the premises constituted an adjudication; because plaintiff was not entitled to subrogation before it paid the judgment; for the further reason that the district court had no power

to cancel the judgments rendered by this court; and because the deed to Mrs. Linder's children was neither a forgery, nor was it in fraud of the rights of Linder's creditors. The motion was supported by affidavits tending to show that the deed was not a forgery, and that there was no fraud in its making. Plaintiff also filed an affidavit, or affidavits, tending to show that it was a forgery, and also relied upon the allegations of the petition, which were sworn to, as tending to show fraud. The motion was submitted to the trial court and by it sustained, and the appeal is from that ruling. It should be stated, however, that the order with reference to the dissolution of that part of the injunction restraining defendants from disposing of the land contained this condition: The motion "is hereby for the present overruled, but however, upon the following condition: That if the plaintiff shall, within thirty days from the date of this order, pay the said judgment in favor of Harriet C. Linder in the Supreme Court of Iowa, then the said temporary injunction shall continue until the hearing of this cause upon its merits, or until the further orders of this court, in respect thereto; but if the plaintiff shall fail to pay said judgment within the said thirty days, then this order shall operate to overrule the entire temporary injunction heretofore ordered in this cause. And it is further ordered that if the said Bankers' Surety Company shall pay said judgment in the Supreme Court within the said time, the said Harriett C. Linder shall then make an assignment over to the plaintiff of said judgment rendered in her favor in the Supreme Court, as provided by Code, section 3967. To that part of the foregoing order refusing to unconditionally dissolve the entire temporary injunction heretofore granted, the said answering defendants at the time excepted."

Counsel on either side have made statements as to subsequent proceedings not sustained by the record; but they all agree, and so state in argument, that since the

order for dissolution was made, but after the expiration
of the thirty days provided for by the order of the dis-
trict court, the surety company, in virtue of rulings on
motions in this court, was compelled to and did pay the
judgment rendered against it here on the supersedeas bond.
On the face of the record, it would seem that the appeal
from that part of the order dissolving the injunction which
restrained the collection of the judgment involves nothing
more than a moot question; for by concessions of counsel
the judgment here against the surety company has now
been fully paid. Counsel for appellees also say in effect
that there is no reason for a reversal of that part of the
order dissolving the injunction restraining defendants from
disposing of the land, because this action is itself a *lis
pendens,* and gives notice to any purchaser of the land. As
to this, more hereafter. The theory upon which the entire
matter was disposed of in the district court seems to have
been that until the surety company paid the judgment or
the debt for which it became liable it was not entitled to
any decree of subrogation, or to any collateral orders which
might be granted to effectuate such an equity. That being
the situation, it is important to note a few more facts
gathered from the record. When the motion for judgment
in this court upon the supersedeas bond was submitted, the
surety company resisted the same, upon the ground that
it had tendered to Mrs. Linder whatever amount was
legally due her, upon condition that its right to subrogation
be protected, and this Mrs. Linder refused to do; and it
also averred in this action that it was ready, able, and will-
ing to pay the judgment held by Mrs. Linder, and offered
to do so, provided its right as surety to be subrogated be
protected. It also averred that it was ready to pay the
judgment to the clerk of this court, provided the said clerk
would issue the same kind of special execution against the
real estate that he would have issued had Mrs. Linder
asked the same; and that the clerk refused to do so. It

also pleaded that Mrs. Linder by her conduct has dis-charged the lien of her judgment against the land of John Linder, and that to the extent of the value thereof it has been discharged.  Attached to the petitions was the tender made by the surety company to Mrs. Linder and her re-sponse thereto.  The tender was upon this condition:  "As a condition precedent to this payment, we require of you an assignment of any and all claims you may have in said litigation against John C. Linder, his estate and real estate, including any judgment against John C. Linder, his estate and lands.  In other words, the Bankers' Surety Company's liability arises solely because it signed an appeal bond as surety for John C. Linder.  The Bankers' Surety Com-pany claims the right, as such surety, to receive, unim-paired, all the rights you have against John C. Linder, his lands and estates.  If it, as surety, pays this debt of John C. Linder's, it claims the right to be subrogated to all your rights, and to be put in your place, and to avail itself of every means which you have to enforce payment against John C. Linder.  If you are willing, upon our pay-ment to you of the above amount, to place us in posses-sion of your rights, then we are willing to make immediate payment, and herewith tender same upon that condition. We request an indication of your willingness, or unwilling-ness, to do this."  The response to this tender was in this language:  "Harriet C. Linder acknowledges receipt of copy of this tender, and acknowledges that the Bankers' Surety Company has tendered, in lawful money of the United States, the correct amount and herewith states that said tender upon the conditions named is refused, and that she, Harriet C. Linder, is not willing to perform the con-ditions annexed to said tender."

Now, while it is true as a general rule that a surety is not entitled to be subrogated to the rights of the creditor until he has paid the debt, a court of equity will never-theless protect a surety who is asked to pay the debt by a

proper decree. In *City of Keokuk v. Love,* 31 Iowa, 119,

1. SURETYSHIP: subrogation. this court said: "It is further claimed by the appellees' counsel that the right of subrogation can not exist until the sureties have paid off the obligation of their principal; that such payment was not made when the judgment in this case was rendered; and hence they had then no right to be subrogated, and their subsequent payment could give them no claim for a reversal in this court, which must review the case tried below, and not decide a new case. All this is answered by the single proposition that the power of a court of equity is not limited to settling the rights of the parties upon what has been done in the past, but it reaches forth and declares their duties and rights for the future; and, in the exercise of this latter power, it should have decreed that when the sureties paid the debt of their principal they should be subrogated to the rights of the creditor." See, also, *Manning v. Ferguson,* 103 Iowa, 561.

In the instant case plaintiff was not only seeking to do equity by offering to pay the judgment rendered by this court, provided its equity of subrogation was protected;

2. SAME: necessity of payment: refusal: effect. but before the judgment was rendered it had made a tender or offer to pay the amount of the judgment, provided Mrs. Linder would assign her judgment to it. Neither offer nor tender would Mrs. Linder accept; and we are of the opinion that in this she was in fault, and that such fault relieved the surety company from paying the judgment until it was protected by a proper decree or order preserving its right of subrogation. The assigned reason for Mrs. Linder's refusal was that her assignment of the judgment might prejudice her independent claim to the real estate. As to this, it is true that the deed under which her children are now claiming reserved a life estate in herself and John Linder for and during their lives or the life of the survivor, and gave them the right to the use, occupancy, and enjoyment of the

land during that period. But it is also true that the judgment obtained by her, which was affirmed by this court, was made a special lien upon the land, which, of course, means a lien upon any interest which John Linder may have had in the land, and not upon her interest, or upon that of any of her children. The harm to be feared had already been done. She had the right to rely upon her judgment, which was made a lien upon John Linder's interest in the land; and by taking such judgment she asserted that he had some interest subject to levy. Having elected to take the judgment and to have that judgment affirmed in this court, she estopped herself from claiming that she herself was the owner of the land, and that her husband had no interest therein which was subject to levy. Her assignment of the judgment to the surety company could, therefore, add nothing to what she had already done. On the other hand, she had no right to protect her children by withholding the assignment. Refusing to make an assignment of the judgment upon payment of the amount to her would amount to a fraud upon the surety. It is well settled that the right of a surety to demand of a creditor whose debt he has paid the securities he holds against the principal debtor, and to stand in his shoes, does not depend at all upon any request or contract on the part of the debtor with the surety, but grows, rather, out of the relations existing between the surety and the creditor, and is founded, not upon any contract, but springs from the most obvious principles of natural justice. *Mathews v. Aikin,* 1 N. Y. 595; *McArthur v. Martin,* 23 Minn. 74.

By performing the contract of suretyship, the principal obligation is discharged against the creditor, and is kept alive between the creditor, the debtor, and the surety for the purpose of enforcing the rights of the last. *McCormick v. Irwin,* 35 Pa. 111; *Edgerly v. Emerson,* 23 N. H. 555 (55 Am. Dec.

3. SAME: rights of surety.

207); *Eddy v. Traver,* 6 Paige (N. Y.) 521, (31 Am. Dec. 261).

Again it makes no difference from whom or how the creditor obtains his securities. The surety is entitled to subrogation to all the securities held by the creditor for

**4. SAME: release of securities: effect.**

the payment of the debt, no matter from whom obtained; and if by any act or conduct he releases the securities, or makes them unavailing to the surety, the surety is to that extent relieved. These rules are sustained by abundant authority. *Gerber v. Sharp,* 72 Ind. 553; *Nelson v. Munch,* 28 Minn. 314 (9 N. W. 863); *Cullum v. Emanuel,* 1 Ala. 23 (34 Am. Dec. 757).

One other rule is very well settled, and that is: After the creditor receives payment, or what equity regards as the equivalent, he has no right to interfere with any dis-

**5. SAME: rights of creditor after payment.**

position which the court thinks proper to make of the judgment as between the defendants, or the surety and the principal debtor or some stranger to the original litigation. *Springer v. Springer,* 43 'Pa. 518. These rules all apply to suits or judgments held by the creditor. *Edgerly v. Emerson,* 23 N. H. 555 (55 Am. Dec. 207).

It follows from what we have said that the surety company was entitled to a decree establishing its right to subrogation and providing for an assignment of Mrs. Linder's

**6. SAME: appeal: grounds for reversal.**

judgment before paying the judgment; and the motion to dissolve this part of the injunction should not have been sustained, unless it be for some reason suggested by appellees' counsel in answer to these rules. It is said that as plaintiff has paid the judgment nothing is to be gained from reinstating the injunction. If the payment had been voluntary, perhaps this would be true. But it was not. The surety company, in virtue of the dissolution of the injunction, was compelled to make an involuntary payment, and this without

any provision for subrogation. It was entitled to have the prayer of the petition sustained without making the payment; and the involuntary payment should not in any respect be held to jeopardize its rights. It should not be placed in a position to be held responsible on its injunction bond by reason of its involuntary payment of the judgment.

It is said that the district court had no control over the processes of this court, and therefore no jurisdiction of this matter. This argument is fallacious. The judgment had been rendered here upon motion; but the orders each expressly recite that they are without prejudice to the right of the surety to proceed in the district court to enforce its right of subrogation. Plaintiff was expressly remanded to the district court to work out its equity; and that court had full power to protect it by the issuance of the necessary writs. None of the authorities cited by appellees run counter to the views herein expressed. Appellees further say that the doctrine of subrogation is not involved; but we think it most certainly was when plaintiff commenced its action, and, as it had not voluntarily dismissed its action or paid the judgment without being given its equitable rights, it may still insist that the order of the district court was erroneous.

7. Same: enforcement of rights: jurisdiction.

Again, it is said that Mrs. Linder is not contesting the right of the subrogation, but denying that there is anything for plaintiff to be subrogated to. We have already intimated that this matter should not be tried out by motion to dissolve; that she has made her election; and that she is in no manner interested in the result of the litigation between plaintiff and her children with reference to their title to the land.

Again, it is said that the orders of this court upon the motions already referred to constitute an adjudication to the effect that plaintiff is not entitled to subrogation, or,

if entitled thereto, that such relief will not be granted until
8. SAME:          plaintiff pays the judgment. The creditor,
   adjudication.  Mrs. Linder, was by statute entitled, upon
affirmance of the judgment here, to a judgment against the
surety company on its supersedeas bond upon motion duly
filed. Code, section 4140. And this statute is undoubtedly
constitutional. *Jewett v. Shoemaker,* 124 Iowa, 561; *Beall
v. New Mexico,* 16 Wall. (U. S.) 535 (21 L. Ed. 292).

In ordering the judgment against the plaintiff as
surety upon the supersedeas bond, there was no adjudica-
tion whatever as to its right of subrogation. After judg-
ment, it could undoubtedly enforce its equitable right of
subrogation by an independent action in equity, or it might
have proceeded under section 3967 of the Code, which
reads as follows: "When the principal and surety are
liable for any claim, such surety may pay the same, and
recover thereon against all liable to him. If a judgment
against principal and surety had been paid by the surety,
he shall be subrogated to all the rights of the creditor, and
may take an assignment thereof, and enforce the same by
execution or otherwise, as the creditor could have done.
All questions between the parties thereto may be heard and
determined on motion by the court or a judge thereof, upon
such notice as may be prescribed by it or him.",

This statutory remedy is manifestly not exclusive. And
an independent action in equity will lie, as already in-
dicated in what precedes. So that the judgment ordered
by this court against the surety on the supersedeas bond
did not in any manner adjudicate plaintiff's right to sub-
rogation; and the orders entered by this court expressly
reserved the question of subrogation for another court by
appropriate proceedings. It is also true that this court,
on motion, denied plaintiff the right to a special execution
upon the judgment in favor of Harriet C. Linder; but this
did not determine its right to equitable subrogation, and
the order of this court on that motion reserved the question.

Even if this were not true until plaintiff paid the judgment, it was not entitled to the execution. Such a proceeding would be at law, and to an execution before paying the judgment plaintiff was not entitled. Moreover, it was then made to appear that certain strangers claimed the land, and this court, as an appellate tribunal, would not undertake an independent inquiry as to the claims of strangers to the title.

It is said in argument, but not supported by the record, that after the appeal to this court one of the judges entered a restraining order preserving the *status quo*, which was afterward dissolved upon motion; but it is manifest that, even if this be true, it did not constitute an adjudication of plaintiff's rights in the premises. In each and every order made by this court, there was an express provision saving plaintiff's rights and equities, so that there is no adjudication binding upon it which deprives it of the right to proceed with its equitable suit for subrogation. It is apparent from what has been said that this suit will involve many questions which could not be heard by this court, among them the following: (1) Was the deed from Linder to the children of Mrs. Linder a forgery? (2) Was the deed, or rather the withholding of the same from record, a fraud? (3) Are the grantees in that deed estopped from claiming thereunder? (4) Is Mrs. Linder estopped from asserting that her husband did not have any interest in the land upon which her judgment was made a lien? (5) Although the deed to the children may be good, is plaintiff entitled to have the Linder judgment made a lien thereon?

None of these questions could properly be determined upon motion in this court; and it was these questions, together with the right to equitable subrogation, which were expressly reserved for determination by a proper tribunal —the district court. This court never decided that plaintiff did not have an equitable remedy of subrogation be-

fore paying the judgment against it. The only doubtful question, if it appeared of record and could be considered on this appeal, would be the effect of the ruling dissolving the restraining order issued by one of the judges of this court. All orders save the last entered by this court, or rather all orders preserving to plaintiff its right, were entered with the express consent of, and some of them upon the suggestion of, appellees or their counsel that this was the proper method for working out the equity of subrogation. The last order, which counsel say was made, simply dissolved a restraining order issued by one of the judges of this court; and that, of course, constituted no adjudication of plaintiff's rights.

II. But counsel say that there is no reason for any injunction now; and that the order of the district court should not be reversed. It is true plaintiff has paid the judgment, and that an injunction will not help in this respect; but for reasons already stated we think it is entitled to an adjudication of this question, and to a reversal of the order in that respect. As to that part of the order restraining defendants from disposing of, incumbering, or transferring the land, we think there should have been no dissolution of the writ. Plaintiff had the right to have the *status quo* preserved pending litigation. *Norris v. Tripp,* 111 Iowa, 115; *Luce v. Fensler,* 85 Iowa, 596; *Manning v. Poling,* 114 Iowa, 26; *Teabout v. Jaffray,* 74 Iowa, 28; *Kelly v. Briggs,* 58 Iowa, 332.

It is no answer to say that the filing of the petition is *lis pendens;* for were it so the plaintiff might be compelled to resort to another action against a purchaser to enforce his rights. Fraud being charged, the filing of an answer in denial was not sufficient ground for dissolving the writ. *Walker v. Stone,* 70 Iowa, 103; *Hayes v. Billings,* 69 Iowa, 387; *Shricker v. Field,* 9 Iowa, 366; *Judd v. Hatch,* 31 Iowa, 491.

9. Fraudulent conveyances: injunction: dissolution.

III.   Again, it is contended that, as Mrs. Linder took judgment in this court on her motion for such judgment on the supersedeas bond, the judgment in the district court, with its lien upon the real estate, ceased to exist; and that plaintiff has nothing in which to be subrogated. This position, even if true, would ordinarily be fraught with danger; and but for the fact that Mrs. Linder has secured her money, as we are informed, it is doubtful if such a position would be assumed. This cancellation of the lien, if it happened at all, was due, not to any act of the plaintiff, but wholly to Mrs. Linder's conduct. If the lien of the original judgment has been extinguished, it was due to Mrs. Linder's act, and to her alone. Ordinarily, if a creditor does anything which releases a security held by her, she, to that extent, releases a surety. As she was pursuing a statutory remedy, it may be that she did not release the plaintiff as surety; but if that be true the original lien must be preserved to the surety by relation back to the situation when he became a surety. Mrs. Linder must take one horn or the other of this dilemma. Either the lien is preserved, and is as potent for plaintiff to-day as it was when it became a surety, and with the same force and effect as if Mrs. Linder were then endeavoring to enforce it against the property, or she, by her acts and conduct, without the consent of plaintiff and against its protest, released and discharged the lien, and to that extent discharged the surety. Neither position will avail here. We concede, of course, that for some purposes there was a merger, as in *Swift v. Conboy*, 12 Iowa, 444; but, in so far as the rights of a surety are concerned, there is either no merger, or else there was a release of the surety. We need not determine which is the proper rule here. The cases, however, seem to hold that the rights of the creditor will be preserved to the surety under such circumstances.

IV.   Lastly, it is contended that to award plaintiff

*10. SURETYSHIP: right of subrogation.*

subrogation will deprive Mrs. Linder of her life estate in
the land reserved to her in the deed of her husband, under

11. SUBROGATION:
extent of
rights
acquired.

which her children claim. But this can not
be so. While the judgment is made a lien
upon the land, it, of course, is not a lien
upon any interest the judgment creditor may have in the
land. The lien must of necessity be upon the interest of
the judgment debtor. Of course, there might be an estoppel
upon the creditor to claim that any part of the land is his;
but this would not arise because of the assignment to a
surety who paid the debt. Such an estoppel would grow out
of antecedent conduct, if at all, and, it may be, could not
be pleaded by one who took the judgment by subrogation.
Upon that proposition we express no opinion at this time,
although we recognize the general rule that one by subroga-
tion gets no greater rights than the creditor would have had.
We have, perhaps, unduly extended this opinion. The ex-
cuse, if any, is to be found in the peculiar facts of the
case. Reduced to the last analysis, it appears that plaintiff
is liable for or has paid a judgment held by Mrs. Linder
against John Linder, for the payment of which judgment
plaintiff was liable as a surety. This judgment was ex-
pressly made a lien upon certain lands, the title to which
then stood in the name of the judgment debtor, John
Linder. On the strength of Linder's ownership of the land,
plaintiff became secondarily responsible for the payment of
the judgment. Upon motion, it has become primarily re-
sponsible to the judgment creditor, and, as we are informed,
has been compelled to pay this judgment. It now asks that
it be subrogated to the judgment creditor's rights under
the judgment; but this is denied, and the creditor wishes
to keep, not only the money arising from the judgment,
which was made a lien upon the land, but also to either
keep the land itself, or protect a life estate in herself and
the remainder in her children, and this in the face of
allegations that the deed is a forgery, was withheld from

the records for more than seven years, and not made public until the death of the grantor, John Linder, was a fraud upon creditors, and in the face of further allegations showing such conduct on the part of the grantees in this deed as throws extreme doubt upon the good faith of the transaction, even if it does not entirely estop them from asserting title. Surely such facts, if true, call for equitable interference and the preservation of the *status quo* until the matter may be fully investigated. We have not undertaken to cite many authorities on the question of subrogation, and no attempt has been made to collect and collate our own. The general principles announced are well understood and really not in dispute, and the only real questions are the application thereof to the facts and a determination of the proper remedies, whereby the equities may be worked out.

It follows from what we have said that the orders and judgment of the district court must be and they are reversed, and the cause is remanded for trial upon the merits and a reinstatement of the temporary writ of injunction, in so far as necessary to preserve the *status quo.—Reversed and remanded.*