CENTRAL STATE BANK, Appellant, v. M. FORD et al., Appellees.

TRIAL: Direction of Verdict—Disputed Questions. Clearly disputed questions of material fact must be passed on by the jury,

irrespective of the court's opinion as to the credibility of witnesses and the weight of their testimony.

GUARANTY:    Discharge of Guarantor—Dissipation of Security—
2   Pro Tanto Discharge.  A guarantor who pleads that he has been *fully* released by the act of the one holding the guaranty in wrongfully permitting the principal debtor to dissipate other security held for the debt, must show that such dissipation was *to the full amount of the guaranty.*

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

SATURDAY, OCTOBER 20, 1917.

ACTION at law upon a promissory note made by the defendant Miles and a separate written guaranty thereof by defendant Ford. The guarantor denied liability, upon grounds explained in the opinion. On the issue joined between plaintiff and Ford, there was a directed verdict for the latter, and from the judgment entered thereon, the plaintiff appeals.—*Reversed and remanded.*

*Randall, Courtney & Harding* and *George F. Buresh,* for appellant.

*Deacon, Good, Sargent & Spangler,* for appellees.

WEAVER, J.—On March 14, 1914, the defendant Miles made and delivered to the plaintiff bank his promissory note for $2,500, with interest, payable 15 days after date. The indebtedness represented by the note was a loan then made to Miles, who was a manufacturer of brick at Cedar Rapids. The transaction was conducted on the part of the bank by its cashier, E. B. Zbanek, and on the part of Miles, in person. With said note, Miles executed, acknowledged and delivered to Zbanek a bill of sale of 600,000 brick, then in his brickyard in that city, and later in the day, and before the money was paid over, Miles brought and delivered to Zbanek the written guaranty in controversy, which in-

strument had been prepared or dictated by Zbanek, and reads as follows:

"Cedar Rapids, Ia. Mar. 4, 1914.

"For value received, I hereby guarantee the payment of a note dated at Cedar Rapids, Iowa, March 4, 1914, for $2,500, due 15 days after date, payable to the Central State Bank or order, at its banking house at Cedar Rapids, Iowa, with interest payable quarterly at the rate of six per cent per annum after date until paid, the said note being signed by Matt J. Miles, at maturity or any time thereafter, with attorneys fees if suit be instituted hereon, waiving demand, notice of non-payment and protest. The above note is further secured by a bill of sale signed by Matt J. Miles to Ed Zbanek on all brick now located at the plant in the Cedar Rapids Brick Company of Cedar Rapids, Iowa.

"M. Ford."

The note was not paid when due, and on August 19, 1914, this action was begun. The petition sets out the note, the bill of sale, and the written guaranty. It describes the bill of sale as having been made and delivered to the bank as a part of the same transaction in which the note was given, and alleges that the guaranty also entered into the transaction as a part thereof. Nonpayment of the note is averred, and judgment asked against both defendants for the full amount of principal and interest. By an amendment to the petition, after the cause had been pending about eight months and had been reached for trial, plaintiff withdrew the allegation that the bill of sale had been made to it to secure the debt, and in place thereof alleged that said instrument had been given to Zbanek to secure Ford against liability on his guaranty.

Answering the petition, Ford admits the note made by Miles to the plaintiff, and admits executing the guaranty. He denies that the bill of sale to the cashier was made to

secure him, and alleges that, before he had executed or delivered the guaranty, the bill of sale had been made to the cashier of the bank to secure payment of the loan to Miles, and that it was this debt, as thus secured to the bank, which he undertook to guaranty. He further alleges in substance that the bank not only negligently failed to protect its said security but, without his consent and at the request of the debtor, Miles, it withheld the bill of sale from record, and permitted him to dispose of the brick covered by said bill to an amount more than sufficient to secure and pay the amount of the note, thereby destroying the security, and that, by such conduct on plaintiff's part, the defendant has been released from all liability on his guaranty.

The principal fact propositions about which the contest on the trial below centered were those attending the execution of the written guaranty. The only persons having personal knowledge of these circumstances are the defendant Ford, the maker of the note, Miles, and the plaintiff's cashier, Zbanek. The testimony of Ford and Miles tends strongly to show that Miles first applied to the bank for a loan, but the bank refused to let him have the money on his personal note, and suggested that he get some responsible surety. Miles, who had not yet approached Ford on the subject, asked Zbanek if Ford would be an acceptable security, and was told that he would. Zbanek then prepared a note, with which Miles went to Ford and requested his signature. Ford refused this request, and Miles returned to the bank and reported his failure. Later, he came back to the bank and proposed to give a bill of sale on his stock of brick. At that time, he had about 800,000 brick in his yard, of the market value of about $7 per 1,000. Zbanek refused to consider the idea of lending money on that security, but the inquiry arose, at whose instance it does not appear, whether, if a bill of sale were given upon the stock of brick, Ford might not then be willing to sign

the note. With this plan in view, Miles again went to Ford, who still refused to sign the note, but said that, if the bank would take the bill of sale, he would enter into a separate agreement to guarantee the debt. Going once more to Zbanek, Miles made to the bank the note now in suit, and the bill of sale to Zbanek, and then made his final visit to Ford and procured his signature to the guaranty which Zbanek had prepared. Upon thus completing the papers, Zbanek or the bank turned over the money to Miles. On the same day, according to Miles, he asked Zbanek if he would be permitted to go on selling the brick to his general trade, and also requested that the bill of sale be withheld from record, as he expected to take up the note within a few days. This request he says was answered affirmatively, and Zbanek promised not to record the bill. The stock of brick was rapidly depleted, and the money obtained by Miles from that source went to pay other debts, and the note in suit was dishonored. Ford swears that he had no knowledge of the arrangement between Miles and Zbanek to keep the bill from the record or to permit the sale of the brick. Later, he says, when notified of the nonpayment of the note, he went to Zbanek, asked him to apply the proceeds of the sales upon the note, and surrender the security or bill of sale to him and he would pay the remainder of the debt, and then for the first time learned of the failure to record the bill and of the dissipation of the security. As against this theory, Zbanek swears that he did not take or offer to take the bill of sale to secure the bank, for he was satisfied with the security offered by Ford's guaranty of the note, but that he took it solely for the benefit and accommodation of Ford, and never considered it as anything belonging to the bank or assumed any responsibility for it. He does not say that Ford requested him to do it, but that Miles said that both he and Ford wanted it done. He admits that Miles asked him not to record the bill, and

told him also that such was the wish of Ford. There was additional evidence by these and other witnesses, but for the purpose of this appeal, further recitation thereof is unnecessary.

At the close of the testimony, counsel for the defendant Ford moved the court for a directed verdict in his favor, on the ground that the evidence shows without conflict that the bank took the bill of sale to secure the payment of the note, that such bill of sale afforded ample security for the payment, and that, by the bank's failure to record the instrument, and by permitting the sale by Miles of the property covered by it, the security which would have protected both the bank and the guarantor was wholly lost. The motion to direct was sustained, and verdict returned for defendant, and thereupon judgment was rendered against plaintiff for the costs.

1. TRIAL: direction of verdict: disputed questions.

As we read the record, it does not sustain the proposition on which the motion was grounded, and the issue should have been submitted to the jury. It may be, and indeed is, true that the jury could well have found that a preponderance of the evidence was in favor of the theory of the defense, but the evidence in that regard was not undisputed. If Ford and Miles are to be believed, the conclusion is, of course, inevitable that the bill of sale was made to the cashier primarily to secure the bank for the loan to Miles; but if Zbanek is to be believed, then he, Zbanek, as a mere trustee or agent, took the bill of sale, not for the benefit of the bank, but for Ford, as a kind of counter security to him against his liability on the guaranty.

2. GUARANTY: discharge of guarantor: dissipation of security: pro tanto discharge.

But the credibility of the witnesses on either hand and the weight and value of their testimony in arriving at the truth of the controversy were for the jury alone, and the legal relations and the rights of the

parties depend very materially upon how this issue of fact is decided. If it be found that Zbanek took the bill of sale for the bank, to secure the note made by Miles, and that it was the note as thus secured of which Ford undertook to guarantee payment, and that the bank, or its cashier, without the knowledge or consent of Ford, withheld the bill of sale from record and permitted Miles to dispose of the brick covered by the bill and thus dissipate or destroy the security which it afforded, then the right of Ford to defend against an action on his guaranty would differ materially from the right which would be his if the bill of sale was made primarily for his security and taken and held by Zbanek as his agent only. If the bill of sale was taken by the cashier for the benefit of the bank, then, while the bank would ordinarily be under no duty to pursue and exhaust such security before calling on Ford to pay the note, it was bound in good faith to preserve the lien of the bill of sale, to be turned over to Ford upon his making such payment; and it would be a manifest violation of this duty for the bank, without his consent, to grant the request of the debtor to withhold the bill from record and permit him to dispose of the property which was the basis of this security. We are of the opinion, however, that such act on the part of the bank does not necessarily relieve the guarantor from all liability, but that his right to be released from the guaranty is limited to the amount of injury he has sustained by reason of the matters of which he complains. A guarantor in such case occupies no better or stronger position than does a surety, and if the creditor releases, or by his fault loses, a security to which the surety or guarantor would have the right to be subrogated, then such guarantor or surety will be released *pro tanto*, but is not necessarily entirely discharged, unless the security so lost equals or exceeds in value the amount of the secured debt.

"A loss of securities by the fault of the creditor only

releases the surety to the extent of the loss." *Mingus v. Daugherty,* 87 Iowa 56, 61; *Hendryx v. Evans,* 120 Iowa 310, 316.    This rule is quoted approvingly in *Whitehouse v. American Surety Co.,* 117 Iowa 328, 330.    See also *Springer v. Toothaker,* 43 Me. 381; *New Hampshire· Sav. Bank v. Colcord,* 15 N. H. 119; *Baker v. Briggs,* 8 Pick. (Mass.) 122; *Bankers Surety Co. v. Linder,* 156 Iowa 486, 496; *Nelson v. Munch,* 28 Minn. 314 (9 N. W. 863) ; *Hancock v. Wilson,* 46 Iowa 352; *Burr v. Boyer,* 2 Neb. 265.    On the other hand, if the jury should find that the bill of sale was taken and held by Zbanek solely as agent or representative of Ford, then the bank would be charged with no duty with respect to the preservation of the security, and the failure of Zbanek to have the bill recorded would not be a defense, either partial or entire.

It follows, without further discussion, that the issues should have been submitted to the jury for its verdict, under instructions fairly presenting both the theory of the plaintiff and the theory of the defendant; and for the error in directing a verdict, the judgment must be reversed and the cause remanded for a new trial.

Other alleged errors have been argued, but, as they involve questions which will not necessarily arise upon a new trial, or are of a character to be controlled by the views we have already expressed, we shall not further consider them. Whether the language of the guaranty sued upon estops the plaintiff from denying that it held the bill of sale as security for the payment of the note, is a question not definitely argued by counsel, and we express no opinion thereon, but mention it here only to avoid any inference that the subject has been foreclosed by this decision.—*Revised and remanded.*

GAYNOR, C. J., PRESTON AND STEVENS, JJ., concur.