**William GRELL and Mary Grell, Appellants,**

v.

**Carmen M. POULSEN, Executor of the Estate of Paul E. Poulsen, Deceased, and John Underwood, Appellees.**

No. 85–445.

Supreme Court of Iowa.

June 18, 1986.

Rehearing Denied July 18, 1986.

Peter C. Riley and Mary K.P. Hoefer of Tom Riley Law Firm, P.C., Cedar Rapids, for appellants.

John T. Nolan of Rate, Nolan, Bohanan, Moen & Lucas, Iowa City, for appellee Poulsen.

Adrian T. Knuth, Anamosa, for appellee Underwood.

Considered by REYNOLDSON, C.J., and HARRIS, CARTER, WOLLE, and LAVORATO, JJ.

WOLLE, Justice.

A disagreement concerning the unwritten terms of a business relationship between Paul E. Poulsen, now deceased, and plaintiff William Grell mushroomed into the present several-party multiple-count lawsuit. The case was submitted to a jury on four damage claims: the Grells' quantum meruit claim against the Poulsen estate; the estate's counterclaims for abuse of process and defamation; and defendant John Underwood's counterclaim against the Grells for abuse of process. The jury found no merit in the Grells' quantum meruit claim and also rejected the defamation counterclaim of the Poulsen estate. On the abuse of process claims which are the subject of this appeal, however, the estate and Underwood recovered damages from the Grells on the theory that Grells had initiated the litigation for the purpose of gaining a competitive business advantage. The Grells contend they were entitled to a directed verdict and judgment notwithstanding the verdict on the counterclaims because the evidence did not satisfy one element of abuse of process. We agree and therefore reverse.

I. *Background Facts.*

In determining whether the evidence was sufficient to satisfy the elements of abuse of process and engender a jury question, we view the evidence in the light most favorable to the counterclaimants who received a favorable jury verdict. *Rippel v. J.H.M. of Waterloo, Inc.,* 328 N.W.2d 499, 500 (Iowa 1983); *Schiltz v. Cullen-Schiltz & Associates,* 228 N.W.2d 10, 17 (Iowa 1975); Iowa R.App.P. 14(f)(2), (17). We focus on the business relationships between the parties. The counterclaimants seek to uphold their favorable jury verdicts on the theory that Grells sued Poulsen and Underwood not to recover damages but solely to disrupt the counterclaimants' businesses and business relationship.

William Grell first went to work for Poulsen as a distributor in Las Vegas, Nevada, for Poulsen's line of marguerita mixes. Poulsen did not manufacture his own drink mixes but obtained them from Bar None, Inc., a bottling company located in Tustin, California which Underwood owned and operated. When the Las Vegas venture was unsuccessful, William Grell returned to Iowa but continued working in Poulsen's bar mix business. His wife Mary and he also performed bookwork and other duties in connection with Poulsen's several Iowa City enterprises. The good business relationship between Poulsen and his supplier Underwood survived the unsuccessful Las Vegas venture; they continued their joint enterprise involving the production and sale of bar mixes in Iowa.

Grells worked for Poulsen in the Iowa City area from April of 1982 until March of 1983 when their business relationship ended in harsh words and bitter disagreements. Poulsen rejected the Grells' contention that he had orally agreed to provide them a partnership interest in his business enterprise. Within three weeks after the employment relationship terminated, the Grells commenced this lawsuit as a damage action against Poulsen. They contended he had committed intentional business torts by inducing them to work for him and then forcing them out of the business. Subsequently the Grells added Underwood as a defendant and alleged that he had "usurped [William Grell's] partnership position with Poulsen." By the time the jury received and rejected those damage claims against the Poulsen estate and Underwood, the Grells had scaled down their theories for recovery to a simple quantum meruit claim for damages.

In the meantime, however, Poulsen counterclaimed for damages alleging abuse of process and defamation, and when Underwood was joined as a defendant he too alleged in a counterclaim that Grells had abused process in filing their damage action. Because the jury rejected Poulsen's defamation counterclaim, we need not relate the evidence on which it was based.

The abuse of process counterclaims were premised on the theory that the Grells had filed their lawsuit solely to gain a competitive business advantage over Poulsen and Underwood. The evidence, viewed in the light most favorable to the counterclaimants, disclosed that William Grell's brother was involved in a bar mix business that was in direct competition with that of Poulsen and Underwood. The brother's business had also received financial assistance from certain relatives of the attorney who initially filed the Grells' lawsuit. Against that backdrop of the Grells' motive to gain a competitive advantage over the bar mix business of Poulsen and Underwood, the counterclaimants highlighted three events which occurred after Poulsen and the Grells had parted company. First, William Grell declared shortly after the breakup that he had set out to find "the meanest lawyer in the country" and he was going to "tear Paul Poulsen's ... head right off his shoulders." Second, William Grell acknowledged that he considered Underwood an innocent bystander; Underwood contends this proved the Grells joined him as a lawsuit defendant solely to destroy his business relationship with Poulsen by driving a wedge between them.[1] Finally, the counterclaimants emphasized that in preparation for trial the Grells requested that Poulsen disclose to them his customer lists and other data concerning the bar mix business.

We must decide whether the evidence satisfied all of the elements of abuse of process or whether, as the Grells contend, the evidence was insufficient to support submission of those counterclaims to the jury.

## II. *Elements of Abuse of Process.*

We have most recently defined the elements of an abuse of process claim in *Schmidt v. Wilkinson,* 340 N.W.2d 282, 284–85 (Iowa 1983), drawing upon earlier discussions of abuse of process in *Mills*

*County State Bank v. Roure,* 291 N.W.2d 1, 4 (Iowa 1980), and *Sarvold v. Dodson,* 237 N.W.2d 447, 448–49 (Iowa 1976). *Schmidt* adopted the definition contained in section 682 of the Restatement (Second) of Torts (1977):

> One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.

In *Schmidt,* we quoted with approval comment b to that Restatement section, an important comment on why the restrictive word "primarily" had been added to the original Restatement definition. The comment provides in pertinent part:

> "Primarily." The significance of this word is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose or benefit ...
>
> For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended. The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it.

We also specifically adopted the following quoted commentary from the Restatement which our *Schmidt* case (340 N.W.2d at 284) describes as an attempt to "crystalize the essence of abuse of process":

> Some act or threat directed to an immediate objective not legitimate in the use of the process is required, and the defendant is not liable if he has done no more than carry the process to its authorized conclusion, even with bad intentions.

Restatement (Second), Torts § 682 app. (1981).

---

**1.** After this action was filed and tried, we amended Iowa R.Civ.P. 80 to discourage the filing of frivolous actions. The amended rule now provides that appropriate sanctions can be imposed upon any lawyer who signs frivolous pleadings and also upon the party for whom frivolous pleadings are filed.

Two Iowa abuse of process decisions cited in *Schmidt* focus on the element which is in question here—whether Grells committed any irregular act in their use of court process. In *Brody v. Ruby*, 267 N.W.2d 902, 906 (Iowa 1978), we held that a lawsuit commenced solely in the expectation of settlement could not be classified as an abuse of process. Subsequently, in *Froning & Deppe, Inc. v. South Story Bank & Trust Co.*, 327 N.W.2d 214, 215 (Iowa 1982), we rejected a counterclaim for abuse of process which alleged that the plaintiff had commenced a damage action to intimidate and embarrass defendants knowing it was not entitled to recover the full amount set forth in the prayer. In both the *Brody* and *Froning & Deppe* cases, we relied on *Holiday Magic, Inc. v. Scott*, 4 Ill.App.3d 962, 969, 282 N.E.2d 452, 456–57 (1972), which held that an act which is proper in the regular prosecution of a proceeding cannot be relied upon as a basis for an abuse of process claim.

We distill from these authorities one element of an abuse of process claim which is missing in this case. A prerequisite for recovery is evidence that the person committed some act in the use of process that was not proper in the regular prosecution of the proceeding. This element has been identified and described, though in somewhat differing language, in several federal and state court decisions. *See, e.g., Sage International Ltd. v. Cadillac Gauge Co.*, 556 F.Supp. 381, 388–90 (E.D.Mich.1982) (some irregular act in the use of process must be plead to state an abuse of process claim); *The Savage Is Loose Co. v. United Artists Theater Circuit, Inc.*, 413 F.Supp. 555, 562 (S.D.N.Y.1976) (abuse of process action is not supported by post-lawsuit events interfering with use of property since they were "a concomitant of any lawsuit"); *Unit, Inc. v. Kentucky Fried Chicken Corp.*, 304 A.3d 320, 331–32 (Del. Super.Ct.1973) (abuse of process claimant must demonstrate "a threat or act in the use of process not proper in the regular conduct of a lawsuit"); *Melton v. Rickman*, 225 N.C. 700, 703, 36 S.E.2d 276, 278 (1945) (an element of abuse of process is

use of the process to secure "a result not lawfully or properly attainable under it"); *Martin v. Trevino*, 578 S.W.2d 763, 769 (Tex.Civ.App.1978) (first element of abuse of process claim is "that the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process").

Neither the Poulsen estate nor Underwood introduced evidence to support this element of abuse of process—an act not proper in the regular prosecution of the proceeding. Proof of an improper motive by the person filing a lawsuit, even a malicious purpose, does not satisfy that element. The Grells took no specific action in connection with their use of process which can be characterized as unlawful or irregular. They did attempt during discovery to obtain lists of the counterclaimants' drink mix customers. Discovery of that type, however, is routine in civil actions and a concomitant of much business litigation. The request was authorized by Iowa Rule of Civil Procedure 129. The counterclaimants had the right to request, and in this case they received, a protective order authorized by Iowa Rule of Civil Procedure 123. *See Farnum v. G.D. Searle & Co.*, 339 N.W.2d 384, 389–90 (Iowa 1983) (discussing factors the trial court may consider in determining whether to restrict or prevent disclosure of confidential information pursuant to Iowa R.Civ.P. 123). The Grells never did receive the customer lists through any legal process. Moreover, the Grells persuasively argue that they had ready access to the same lists while working for Poulsen just three weeks before they commenced the lawsuit.

In ruling on the Grells' motion for judgment notwithstanding the verdict, the trial court wrote that William Grell had used the legal process against the counterclaimants "to help his brother's business, as opposed to collecting damages." That finding does not provide the element missing here—proof of an irregular misuse of the process itself. We conclude that neither the Grells' filing of a damage lawsuit nor their re-

quest for production of customer lists constituted an irregular act in the use of process on which an actionable claim could be founded.

The Grells were entitled to a directed verdict and judgment notwithstanding the verdict on the counterclaims of the Poulsen estate and Underwood. We overturn the counterclaimants' judgments against the Grells.

REVERSED.