Patrick M. BERRYHILL, Thomas A. Popa and North American Motorsports Corporation, Appellees,

v.

John A. HATT, Appellant.

Patrick M. BERRYHILL and Thomas A. Popa, Appellants,

v.

John A. HATT and Dorris V. Hatt, Appellees.

Nos. 87–432, 87–199.

Supreme Court of Iowa.

Aug. 17, 1988.

Keith Stapleton, Cedar Rapids, for appellees defendants.

John L. Riccolo and Diane B. Gould of Wenzel, Piersall, Riccolo & Harms, P.C., and Iris E. Muchmore of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellants plaintiffs.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

The contractual relationship underlying this dispute involves a real estate lease and

sale contract between defendant John A. Hatt, as lessor-seller, and plaintiffs Patrick Berryhill and Thomas Popa, as lessee-buyers.

In a law action plaintiffs asserted that defendant Hatt breached the contract and was subsequently liable for abuse of process in trying to get them to leave the leased premises. The trial court jury agreed and assessed compensatory and punitive damages against Hatt on both the abuse of process and breach of contract claims. Judgment was entered on the verdict. The court of appeals reversed the judgment on both issues. On plaintiffs' application for further review, we agree with the court of appeals on the issue of abuse of process, but disagree with the decision on the contract issue. In considering the issues raised upon further review, we conclude Hatt breached the contract by anticipatory repudiation, justifying an award of compensatory damages but not punitive damages for plaintiffs. The court of appeals decision is vacated and the case is remanded for entry of judgment in accordance with this opinion.

In plaintiffs' separate action for specific performance of the contract against defendants John A. Hatt and Dorris V. Hatt, the trial court denied recovery and the court of appeals agreed. We also vacate that court of appeals decision, and reverse the trial court judgment and remand for further proceedings.

I. *Background facts and proceedings.* The parties executed two documents relevant to this case. The first, executed on December 7, 1982, and the second, superseding the first, on August 1, 1983. The trial court dispute involved the second document.

The first document was drafted on a preprinted form entitled "Uniform Purchase Agreement" with the help of a realtor. The second contract, however, was rather artlessly drafted on an identical form by the parties themselves without the assistance of a realtor or an attorney. Where the form left blanks to be filled in by the parties, Berryhill, Popa and Hatt, sitting together in an office, mutually agreed upon the language to be used and Popa typed the agreed language into the contract form. Some typed language in the second purchase agreement was copied from the first without change and made little sense in the context of the second agreement. Neither of the two agreements were signed by Hatt's wife, Dorris V. Hatt.

The property to be sold consisted of the rear portion of a lot in Cedar Rapids owned by Hatt, and included a warehouse building on the premises. The sale price was to be $47,000.00, and the August 1, 1983, contract stated:

Buyer shall pay seller $13,500.00 at time of settlement. Balance of $33,500 to be executed by Uniform Sales Contract at 11% interest.... This offer subject to seller splitting property into two parcels with 15′ [foot] easement across front parcel to rear parcel, and buyer buying adjacent property to provide rear parcel with legal street frontage.

According to Popa's testimony, this provision was added because applicable Cedar Rapids zoning regulations mandated that the lot have access to existing streets.

Another pertinent provision of the contract contained in the preprinted language stated in part:

ABSTRACT AND MERCHANTABLE TITLE. SELLER shall, immediately upon request, have the Abstract of Title extended to date and submit it to BUYER for examination by his attorney. Such Abstract of Title shall show merchantable title in the SELLER, subject only to encumbrances and liens herein assumed and such other encumbrances and liens as shall be paid from the proceeds of this sale. *If this sale is on the deferred installment plan, such other encumbrances shall not exceed the unpaid balance of purchase price hereunder....* Upon full payment of purchase price SELLER shall deliver to BUYER a general warranty deed to said property accompanied by such abstract of title.

(Emphasis added.)

Although this agreement was entered on August 1, 1983, other typed language indi-

cated that "settlement" was to be made "by August 1, 1983 or within two weeks of plat approval whichever occurs first." This language was also on the document dated December 7, 1982. Because there had been no plat approval by August 1, 1983, the first document was terminated and the second document was drafted on that date. Popa copied this settlement language into the second contract directly from the first contract without change.

The lease portion of the agreement, also typed, stated, "Buyer to rent property for $320.00 per month commencing August 1, 1983 until closing or August 1, 1988, whichever comes first." The plaintiffs had been renting the lot and building since the previous December under a similar rental provision in the first agreement. While renting the building, plaintiffs undertook substantial remodeling of the warehouse to accommodate work space for their race car assembly business and to add offices, restrooms and a shower facility.

Pursuant to the agreement, Hatt sought a variance from the Cedar Rapids Zoning Board of Adjustment (board). The board granted the variance splitting his lot on March 12, 1984, contingent upon Hatt filing an easement and paving a large parking area to the north of the building on plaintiffs' proposed lot. The paving was needed because the board believed zoning regulations required a sufficient number of parking spaces adjacent to the business structures. This paving requirement added a substantial and unexpected expense to the sale of the lot, and Hatt informed plaintiffs that they would have to pay for the paving. Plaintiffs objected, first, because they would be sharing the parking area with the other business on the existing lot, and, second, because they believed they were not obligated to pay any costs associated with splitting the lot.

At the same time, Popa, who had served on the zoning board in the past, noticed that the board had been mistaken about the use of plaintiffs' building. Subsequently, on April 25, 1984, plaintiffs petitioned the board to reduce the parking requirement.

On April 27, Hatt filed the easement required by the board. Additionally, he filed an easement over the entire parking area for his own benefit. When plaintiffs learned of this easement, they also discovered that due to an error in the legal description, the easement filed by Hatt overlapped with the back wall of their building. A meeting was held between the parties to come to some resolution concerning the paving costs and the easement problem. Hatt was adamant that he was not required to pay for the paving because nothing in the contract expressly assigned that duty to him. No agreement was reached at this meeting.

Shortly thereafter, Hatt demanded that the plaintiffs close on the transaction and pay the down payment of $13,500. Plaintiffs responded that they would not close until the issues concerning the easement and pavement were resolved and they were provided an abstract of title to the real estate for examination.

Noting that the buyers failed to close, Hatt commenced forfeiture proceedings under Iowa Code chapter 656 and delivered a notice of forfeiture of the real estate contract to plaintiffs' attorney, who refused to accept service. Instead, the attorney was anticipating receipt of an abstract of title on the property. Upon learning that buyers' attorney had refused service, Hatt placed the notice of forfeiture with the county sheriff on May 16, 1984, for service upon plaintiffs. The next day, May 17, an abstract of title to the property was delivered to the attorneys for the plaintiffs. A subsequent title opinion rendered by the plaintiffs' attorneys noted approximately $180,000 in liens against the property.

Despite plaintiffs' protests, Hatt by this time insisted the contract was "null and void," and continued to press forfeiture proceedings. Plaintiffs filed an action and were granted an injunction by the court on June 27 restraining Hatt from proceeding with the forfeiture. Meanwhile, plaintiffs' continued efforts to resolve the parking pavement problem were successful. On July 9, the board removed the requirement for the extensive parking area behind plain-

tiffs' building. Following this change, plaintiffs informed Hatt that they were ready to close as soon as Hatt produced evidence that the liens on the property were cleared or would be cleared by closing. Hatt advised plaintiffs unequivocally that he considered the contract rescinded by their refusal to close upon his prior demand.

Relations between the parties at this point were strained. Hatt refused to accept any further rent, and at one point the water line which ran to the plaintiffs' building through Hatt's building was turned off. On September 15, 1984, Hatt caused to be served upon plaintiffs a notice to terminate tenancy, later followed by a three day notice to quit. Plaintiffs in response obtained a temporary injunction enjoining the termination action and an order to force defendant to restore water service to their building.

Plaintiffs filed a petition at law, as amended, asserting breach of contract and abuse of process against John A. Hatt, and later filed an action in equity against Hatt and his wife, Dorris V. Hatt, for specific performance of the real estate contract. The two cases were consolidated for trial.

Over defendant's motion for a directed verdict, the law action was submitted to the jury. The jury awarded damages in favor of the buyers on their breach of contract claim in the amount of $11,500 actual and $27,000 punitive and on the abuse of process claim in the amounts of $2,000 actual and $27,000 punitive. The court entered judgment for the plaintiffs on the verdicts. The court overruled defendant's motions for a new trial and judgment notwithstanding the verdict and defendant John A. Hatt appealed.

Subsequent to that ruling, the court denied plaintiffs' petition for specific performance against defendants John and Dorris Hatt. Plaintiffs appealed that ruling.

We transferred the case to the court of appeals. That court reversed the law action, finding that there was insufficient evidence of breach of contract and abuse of process to support submission of those is-

sues to the jury. The denial of specific performance was affirmed. We granted plaintiffs' petition for further review.

We turn first to the issues presented in the law action.

■ II. *Abuse of process.* Plaintiffs claimed that defendant John Hatt was liable for abuse of process in causing a notice of forfeiture of the contract to be served on them at a time when Hatt had not fully performed his obligations under the contract. The trial court submitted this issue to the jury and entered judgment for plaintiffs based on the jury verdict. The court of appeals held that plaintiffs' abuse of process claim should not have been submitted to the jury. Upon further review, we agree with the court of appeals.

The hurdle facing a party asserting abuse of process is high. In *Grell v. Poulsen,* 389 N.W.2d 661, 663–64 (Iowa 1986), we adopted the rule for abuse of process claims in section 682 of the Restatement (Second) of Torts and discussed at length the required elements of such claims. We need not repeat that discussion here. The one element of an abuse of process claim which was missing in *Grell,* and in several authorities discussed in *Grell,* is also missing here. There must be evidence that the person accused of abuse of process "committed some act in the use of process that was not proper in the regular prosecution of the proceeding." *Id.* at 664.

Considering the contract void, Hatt served on plaintiffs a "Notice of Forfeiture of Real Estate Contract." This filing was both customary and proper in the regular prosecution of an action asserting that a real estate contract had been breached. Even assuming, as plaintiffs assert, that Hatt filed the notice to gain the benefits of the improvements plaintiffs made to the property, there was still no abuse of process. As we noted in *Grell,*

> [T]here is no action for abuse of process when the process is used for the purpose for which it is intended, [even though] there is an incidental motive of spite or an ulterior purpose or benefit.

*Id.* at 663 (quoting Restatement (Second) of Torts, § 682 comment b (1977)); *see also Royce v. Hoening,* 423 N.W.2d 198, 202 (Iowa 1988) (where it was noted that there is no abuse of process where an individual, with malicious intent or otherwise, does no more than initiate and prosecute an action to its authorized conclusion (citing *Tomash v. John Deere Indus. Equip. Co.,* 399 N.W.2d 387, 390–91 (Iowa 1987))).

We agree with the court of appeals decision that the abuse of process claim should not have been submitted to the jury. Plaintiffs failed to generate substantial evidence to establish a factual issue that Hatt commenced the forfeiture proceedings primarily for a collateral purpose. The trial court judgment is reversed in that regard.

III. *Breach of contract.* The next question is whether there was substantial evidence of a breach of contract by Hatt to justify submitting that issue to the jury. The court of appeals concluded that plaintiffs neither tendered performance nor ever indicated they were ready to do so; therefore, the time for seller's performance never occurred. We cannot agree.

To the contrary, the record shows substantial testimony from which a reasonable jury could conclude that plaintiffs repeatedly advised defendant they wanted to close the sale. While plaintiffs did not offer to close until after defendant served them with a notice of forfeiture, they had not become bound to perform before that notice arrived as we explain in subsection B of this division. Plaintiffs' conduct in this regard does not undermine their claim of breach of contract by defendant.

Inasmuch as we vacate the decision of the court of appeals on this issue, we have discretion to consider all of defendant's assertions of trial court error on the contract issue raised on appeal. *In re Marriage of Zabecki,* 389 N.W.2d 396, 401 (Iowa 1986). We choose to exercise that discretion to review those issues here.

■ Defendant's motion for directed verdict, and subsequent motion for judgment notwithstanding the verdict, both asserted insufficient evidence of a breach of contract by Hatt to support submission of that issue to the jury. As the trial court charged the jury in instruction 17, the following elements are necessary for a buyer to show a breach of contract: (1) the existence of the contract; (2) the terms and conditions of the contract; (3) that the buyers have performed all of the terms and conditions of the contract required of them to now require the seller to perform; (4) that the contract was breached in some particular way; and (5) that the buyer has suffered damages. *Cf.* Iowa Civil Jury Instruction no. 2400.1 (1986). Defendant attacks the sufficiency of the evidence to support a finding on each of those elements, and claims his motion for directed verdict was erroneously overruled.

Addressing defendant's contentions on these points, we view the evidence in the light most favorable to the party against whom the motion was made. Iowa R.App.P. 14(f)(2). "Every legitimate inference that reasonably may be deduced from the evidence must be afforded the nonmoving party; and if reasonable minds can differ as to how the issue should be resolved, a jury question is engendered." *Henkel v. R and S Bottling Co.,* 323 N.W.2d 185, 187–88 (Iowa 1982). If there is substantial evidence in support of each element of plaintiffs' claim, the motion for directed verdict or for judgment notwithstanding the verdict should be denied. *Valadez v. City of Des Moines,* 324 N.W.2d 475, 477–78 (Iowa 1982).

■ A. *Existence of the contract.* Defendant first argues that the agreement between the parties was a conditional offer which never became a contract. Plaintiffs disagree. At issue is whether the August 1, 1983, document is an enforceable contract or merely a writing expressing an open offer, terminated when the defendant instituted forfeiture proceedings.

The document itself is a preprinted form entitled "Uniform Purchase Agreement," implying that it is somehow precontractual. The agreement is conditional on several occurrences, and there is a definite date after which the sale shall not take place if the conditions are not satisfied. The lan-

guage used to create the condition of splitting the lot refers to the "offer" being conditional.

There is also an additional clause at the end of the document which gives plaintiffs a right of first refusal if "seller secures a bona fide offer to sell property" prior to August 1, 1988. Whether this clause refers to the entire lot or only the portion to be purchased by plaintiffs is uncertain. Hatt claims it refers only to the lot plaintiffs were to buy, and argues that this language allowing the lot to be purchased by other buyers indicates that the document is only an open offer.

On the other hand the provisions of the writing are contractual. The second line reads, "The undersigned BUYER hereby offers on the following terms." Following that line is a sale price, a specific description of the property to be purchased and the payment terms. The final sentence on the front page of the document states, "The undersigned SELLER of the above described property hereby accepts the above offer and agrees to sell said property according to its terms on this 1st day of August, 1983." The document is executed by both plaintiffs and John A. Hatt. *See* 77 Am.Jur.2d *Vendor and Purchaser*, § 6 (1975) (One of the essentials to an enforceable contract for the purchase and sale of real property is that the writing set forth the price to be paid. Furthermore, indefiniteness as to the method of payment of the purchase price may render a contract unenforceable.).

In addition to this document, the jury had before it testimony by Popa and Hatt. Significant to the question of whether the parties intended to create an enforceable contract, Hatt testified that he believed there was a contract which was made "null and void" when he served notice of forfeiture. Indeed, what Hatt caused to be served upon plaintiffs was a "Notice of Forfeiture of Real Estate *Contract.*" (Emphasis added.)

Popa's testimony clarified the apparent discrepancy with respect to the settlement clause. He stated that the parties planned to close on the sale two weeks after the lot

was split. He explained that the settlement date of "August 1, 1983 or within two weeks of plat approval whichever occurs first" was mistakenly borrowed from the December 1982 agreement without change. Lastly, Popa explained in his testimony that the clause giving the plaintiffs right of first refusal, rather than apply only to the newly formed half-lot, was intended to protect the plaintiffs' interests if the defendant received an offer to buy the entire lot before the parties could split the lot and close the sale.

■ Between the preprinted language and the added, typed language, significant ambiguities exist. Faced with these, the trial court correctly submitted the question of the parties' intent to the jury. While contract construction, the process of determining legal effect of a document, is a legal matter for the court, interpretation, the process of determining the meaning of the words used, is a matter for the jury when extrinsic evidence is needed at the trial level. *Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp.*, 266 N.W.2d 22, 25 (Iowa 1978).

Based upon the contract language and trial testimony, we conclude that there was substantial evidence upon which the jury could find that the parties intended the August 1, 1983, document to be a binding contract for the sale of real estate.

*B. Terms and conditions of the contract.* Given that the August 1, 1983, document was a contract, many of the terms and conditions are clear from the face of the document. Two exceptions are the interpretation of when closing or settlement was to take place requiring plaintiffs to tender their $13,500 down payment, and the interpretation of the condition that plaintiffs buy adjacent property to allow street frontage for their new lot.

■ 1. The contract listed the date of settlement as August 1, 1983, or within two weeks of plat approval. If, indeed, the parties meant the closing to be on the date of signing the contract, the remainder of the language is superfluous. Elsewhere the contract reads that rent on the proper-

ty is to begin "August 1, 1983 until closing or August 1, 1988, whichever occurs first." The logical inference from this clause, that closing may occur up through July 1988, clearly contradicts the prior language indicating that closing occur on August 1, 1983.

The jury was told in instruction number 22 that if it found that the parties had intended the closing date to be the date of signing, August 1, 1983, that intent would be an excuse to defendant's breach of contract. The jury found no excuse to defendant's breach. Hence, the jury necessarily decided that the intended closing date was not the same date that the contract was signed. Substantial evidence supports such a finding.

■ 2. Secondly, Hatt objected at trial that plaintiffs never fulfilled their duty to purchase adjacent property to provide legal street frontage. The agreement executed by the parties provided, "This offer subject to seller splitting property into two parcels with 15′ easement across front parcel to rear parcel, and buyer buying adjacent property to provide rear parcel with legal street frontage." The testimony on this point was in dispute. Popa testified that this provision was put into the contract for the plaintiffs' own benefit. He stated that between the formation of the first agreement in December 1982, and the second in August 1983, the plaintiffs had exhausted the possible options to purchase adjacent property. Therefore, they could not provide the lot with street access other than the easement specified in the contract. Again, this language was incorporated into the August 1 agreement without change from the prior contract. Hatt testified that he understood the easement was to be temporary until the plaintiffs acquired other means of street access. Hence, even under Hatt's version, the sale could have been completed before plaintiffs had to purchase other property.

This question was submitted to the jury. Instruction number 20 allowed the jury to conclude that the condition of purchasing adjacent property was waived by plaintiffs if the jury found that it was put into the contract for plaintiffs' benefit. We agree this is a correct statement of the law. See 17 Am.Jur.2d Contracts § 390 (1964); 3A Corbin on Contracts § 761; accord McGee v. Breezy Point Estates, 283 Minn. 10, 21–22, 166 N.W.2d 81, 89 (1969). By its verdict, the jury found that the requirement of purchasing adjacent property was waived, and we conclude the jury had sufficient evidence before it to support such finding.

3. The jury concluded that a contract existed and was to be closed sometime after it was signed. It is for us to construe the contract to determine, in light of the parties' intent, the legal effect of the contract.

■ The established rules of contract construction assist us here. It is the cardinal principle of contract construction that the parties' intent controls; and except in cases of ambiguity, this is determined by what the contract itself says. Iowa R.App. P. 14(f)(14). Ambiguity exists when, after application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty exists concerning which of two reasonable constructions is proper. Gendler Stone Prod. Co. v. Laub, 179 N.W.2d 628, 631 (Iowa 1970).

■ We conclude that the parties entered into a binding executory contract. The obligations of either party to perform the contract awaited satisfaction of the "conditions precedent" in the contract that Hatt legally divide his lot into two lots with an easement for the portion of the lot away from any accessible street. See National Farmers Org., Inc. v. Lias, 271 N.W.2d 751, 754 (Iowa 1978) (conditions precedent are events occurring subsequent to the making of a valid contract that must occur before there is a right to immediate performance).

In determining the date of performance, we strive to give effect to all of the language of a contract. Fashion Fabrics, 266 N.W.2d at 26. We stated the following in Fashion Fabrics:

Because an agreement is to be interpreted as a whole, it is assumed in the first

instance that no part of it is superfluous; an interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.

*Id.* (citing Restatement (Second) of Contracts § 229 (Tent. Draft 1–7)). Giving meaning to as much of the contract language as possible, in light of the parties' intent, we conclude that the closing or date of settlement was to take place two weeks after the lot was officially split as long as that date came before August 1, 1988.

C. *Performance by buyers and proof of breach.* The third and fourth elements of a breach of contract claim require the moving party, the plaintiffs here, to show that they have performed all of the terms and conditions required of them to be entitled to demand performance by the other party, and breach by the other party.

At trial, each party argued that the other party breached the contract by failing to perform that party's duty first. Plaintiffs contended that defendant was required to not only establish a legal lot, but also give them evidence that the title would be unencumbered on the date of exchange before they would be obligated to tender the down payment. Hatt argued that he was not bound to produce a merchantable title until the down payment was tendered.

As we read the contract, neither party was yet bound to perform when Hatt served notice of forfeiture of the contract on plaintiffs because the conditions precedent had not yet been satisfied.

The paramount condition precedent of this contract was the requirement that Hatt split the property before closing. Although Hatt did receive approval from the board of adjustment to split the property, that approval was expressly conditioned upon the paving requirement imposed by the board. The paving requirement and the additional expense involved proved to be the undoing of the entire arrangement. Hatt considered the pavement to be a part of the new lot, and thus the buyers' responsibility. Plaintiffs, on the other hand, saw the paving expense as one of the costs involved in splitting the property forming a "legal lot". Each side refused to pay this added expense.

■ Rather than pursuing some mutual resolution of the paving dispute, Hatt demanded plaintiffs tender the down payment, despite the fact that the conditions to splitting the lot were not yet satisfied. Plaintiffs refused, as was their right at that time. While the paving requirement was eventually removed by the board due to plaintiffs' efforts, Hatt served notice of forfeiture on the plaintiffs before that requirement had been satisfied and before he presented the abstract to plaintiffs for inspection. From that point forward, Hatt refused to cooperate with plaintiffs in any way despite their repeated requests. In essence, Hatt breached the contract by anticipatory repudiation. By serving upon plaintiffs the notice of forfeiture, Hatt repudiated the contract. *See Williams v. Clark*, 417 N.W.2d 247, 250 (Iowa App. 1987); *accord Bitzes v. Sunset Oaks, Inc.*, 649 P.2d 66, 70 (Utah 1982) (holding that seller repudiated a real estate contract where it refused to honor a sale contract and returned buyer's down payment after compliance with a city drainage easement added an unforeseen expense to formation of the lot to be sold); *Blue Lakes v. George Gowing, Inc.*, 464 So.2d 705, 708 (Fla.Dist. Ct.App.1985) (where the court found seller had repudiated a real estate contract by twice attempting to return buyer's deposit after buyer initially failed to obtain financing); Restatement (Second) of Contracts § 250 (1981). Repudiation generally gives rise to a claim for anticipatory breach of the contract. *Lane v. Crescent Beach Lodge & Resort, Inc.*, 199 N.W.2d 78, 82 (Iowa 1972); Restatement (Second) of Contracts § 253 comment a (1981).

■ With an anticipatory breach, the nonbreaching party may consider the contract breached and sue immediately, or await the time of performance and then upon failure of performance hold the breaching party responsible for the consequences of nonperformance. *Glass v. Minnesota Protective Life Ins. Co.*, 314 N.W.2d 393, 396 (Iowa 1982); *see* 17 Am.

Jur.2d *Contracts* § 457 (1964); Restatement (Second) of Contracts § 243 comment a (1981). Plaintiffs continued to consider the contract in force and encouraged defendant to perform until the time for performance. It was not until Hatt repeatedly refused to perform that plaintiffs filed their present actions.

The city board officially granted the property variation allowing the property to be split on July 9, 1984. When performance became due, two weeks after that date, plaintiffs did not actually tender the down payment. Nevertheless, as we have stated before, when a tender would be to no avail, it is excused. *Lyon v. Willie*, 288 N.W.2d 884, 891 (Iowa 1980); *see also Kuhlman v. Wieben*, 129 Iowa 188, 190, 105 N.W. 445, 446 (1905) (when party to whom tender would be made has repudiated the contract, tender is a useless act). Plaintiffs repeatedly requested that Hatt present merchantable title and close, and this was sufficient to preserve plaintiffs' rights. *Cf. Mintle v. Sylvester*, 202 Iowa 1128, 1133, 211 N.W. 367, 370 (1926) (where plaintiff was aware that defendants were able and willing to perform, and plaintiff informed defendants he could not perform, formal tender by defendants was not necessary).

We conclude that substantial evidence supports a jury finding of adequate performance by the plaintiffs and breach by defendant John A. Hatt. Plaintiffs' claim was properly submitted to the jury.

D. *Damages.* Finally, defendant contests the sufficiency of the evidence to support either the award of compensatory or punitive damages for breach of contract. We agree with defendant's contention as to punitive damages.

Punitive damages are always discretionary, and are not a matter of right. *Rowen v. Le Mars Mut. Ins. Co. of Iowa*, 282 N.W.2d 639, 661 (Iowa 1979). A breach of contract alone, even if intentional, will not form the basis of punitive damages. *Suss v. Schammel*, 375 N.W.2d 252, 255 (Iowa 1985). Rather, the breach must also constitute an intentional tort, or other wrongful act, committed with legal malice, that is with willful or reckless disregard for another's rights. *Pogge v. Fullerton Lumber Co.*, 277 N.W.2d 916, 920 (Iowa 1979). While Hatt's conduct was at times belligerent, explaining the jury's sentiment as expressed in its award of $27,000 in punitive damages, we conclude that his conduct did not rise to the level required to justify an award of punitive damages in a contract case. Trial court's judgment for plaintiffs on that verdict must be reversed.

As to the jury's award of compensatory damages and judgment thereon, we affirm. Traditional contract damages are intended to place the injured party in the position that party would have occupied had there been performance. *Metropolitan Transfer Station, Inc. v. Design Structures, Inc.*, 328 N.W.2d 532, 536 (Iowa App.1982); *see DeWaay v. Muhr*, 160 N.W.2d 454, 459 (Iowa 1968); 22 Am.Jur.2d *Damages* §§ 26, 45 (1988).

Defendant argues that no evidence of compensatory damages was offered at trial except attorney's fees which he contends were not proven to be necessary. We cannot agree with this contention.

Jury instruction number 21 allowed the jury to measure plaintiffs' damages by (1) the amount by which the balance due on the contract would have been reduced as of the present date, had the sale been closed; and (2) by the expenses the plaintiffs have incurred in attempting to close the sale transaction.

Aside from the attorney's fees, we find there was other evidence of loss of the bargain. Under the August 1, 1983, contract, plaintiffs were to pay $320 per month rent until closing, at which time they would then stop paying rent and would start making payments of $320 per month against the outstanding principal balance of the contract sale price. Between the date performance became due and the date of the verdict, plaintiffs lost the equity they would have built in their property if the contract had been performed. Such losses may reasonably be considered as "arising naturally from the breach of contract itself," and may "reasonably be supposed to

have been in the contemplation of the parties, at the time of contracting, as the probable result of the breach." *Meyer v. Nottger,* 241 N.W.2d 911, 920 (Iowa 1976) (citing 5 Corbin on Contracts § 1007 at 70 (1964)).

We also find the jury's award based on attorney fees proper. The trial court was specific in delineating that fees charged for legal services related to trying this law suit could not be considered as damages by the jury. On the other hand, fees charged for services rendered in trying to get Hatt to perform the contract after the breach, but before filing suit, could be considered by the jury as consequential damages. Additionally, the jury during deliberations sent a note to the trial judge asking whether attorney fees for the case should be considered. In a supplemental instruction added to the record, the trial court responded that attorney fees for either party associated with the pending case should not be considered.

Therefore, only those fees associated with attempting to get Hatt to perform were considered by the jury under the court's instructions. Had defendant not breached by anticipatory repudiation, plaintiffs would not have incurred the legal expenses associated with unsuccessfully attempting to close the real estate sale. *Cf. Cactus Utility Co. v. Larson,* 709 S.W.2d 709, 716 (Tex.Ct.App.) (finding that company's regular accountant breached contractual obligation to determine a company's net value "as soon as possible" provided legal basis for award of independent accountant's fees because such fees were not incidental to the litigation but were incurred because of breach), *aff'd in part and rev'd in part on other grounds,* 730 S.W.2d 640 (Tex.1986).

We find that the compensatory damage award is supported by substantial evidence submitted during trial. While the award is not precisely equivalent to the damages submitted, it is within a permissible range of the evidence.

**IV.** *Attorney fees for the contract litigation.* The other question raised by defendant on appeal is whether the trial court erroneously awarded the plaintiffs $5,000 after trial for attorney fees in bringing and trying the breach of contract action. As defendant correctly points out, Iowa Code section 625.22 (1985) allows a court to award attorney fees in an action "[w]hen judgment is recovered upon a written contract containing an agreement to pay an attorney's fee...." That is precisely what happened here. The August 1, 1983, contract contained a provision allowing recovery by the buyer of reasonable costs and attorney fees if the seller fails to fulfill the agreement. The court found that $5,000 was a reasonable fee allowance for the breach of contract action, and we have no reason to disturb that finding.

**V.** *Specific performance.* Lastly, plaintiffs appeal the trial court's decision denying their petition for specific performance against defendants John A. Hatt and Dorris V. Hatt which was consolidated with the law action.

Specific performance of a contract is a remedy resting in the equitable discretion of the court. Acting in equity, we review the district court judgment de novo. Iowa R.App.P. 4. The object of specific performance is to best effectuate the purposes for which a contract was made, and it should be granted upon such terms and conditions as justice requires. *Janssen v. North Iowa Conference Pensions, Inc.,* 166 N.W.2d 901, 907 (Iowa 1969).

While plaintiffs argue this is an appropriate case for granting specific performance, defendant John Hatt answers, first, that plaintiffs failed to show that the property in question was "unique" as required for specific performance, and second, that requiring specific performance would constitute double recovery for plaintiffs. We find neither argument persuasive.

Specific performance is available when the contract involves property which is unique. *Moser v. Thorp Sales Corp.,* 256 N.W.2d 900, 907 (Iowa 1977). Real estate is assumed to be unique. *Id.* In addition to this assumption, plaintiffs spent considerable money adapting the building on the land to their business.

Plaintiffs have certainly demonstrated that this property is appropriate for specific performance.

■ Addressing the question of double recovery, we note, first, that there is nothing inherently inconsistent between legal remedies for breach of contract and equitable remedies for specific performance. *Id.* at 906; *see* 5A Corbin on Contracts § 1222 at 473–75 (1964). Plaintiffs could bring both actions because they both assume the validity of the contract. Second, the remedies are not necessarily alternative in nature. The power of the court in equity is not limited to settling the rights of the parties for past occurrences; it allows the court to declare their duties and rights for the future as well. *Moser,* 256 N.W.2d at 907 (quoting *Bankers Surety Co. v. Linder,* 156 Iowa 486, 494, 137 N.W. 496, 499 (1912)).

The legal remedy only determined the rights and duties of the parties up to the time the jury rendered its verdict. Specific performance would cover the future rights of the parties and the closing of the real estate contract transaction. We deem specific performance to be an appropriate, supplemental remedy to serve justice in this case. We reverse the trial court judgment on this issue as to defendant John A. Hatt.

With respect to Dorris V. Hatt, the record does not fully reveal her contribution or participation in the contract negotiation. Because defendant Dorris V. Hatt did not sign the contract, no basis appears to allow enforcement of specific performance against her. At this juncture, the trial court judgment so far as it concerns Dorris V. Hatt is affirmed. We note, however, that the contract to be enforced against John A. Hatt obligates him to deliver to plaintiffs a "general warranty deed" upon receiving full payment. The feasibility of specific performance by plaintiffs against John A. Hatt alone is not an issue before us.

VI. *Disposition.* We vacate the court of appeals decision in both cases.

In the law action we reverse the trial court judgment as to plaintiffs' abuse of process claim. As to plaintiffs' breach of contract claim, we affirm the trial court judgment as to compensatory damages and post-trial allowance of attorney fees and reverse the judgment as to punitive damages. The law action is remanded for entry of judgment consistent with this opinion.

In the equity action for specific performance, we affirm the trial court in denying specific performance against defendant Dorris V. Hatt. We reverse the trial court judgment as to defendant John A. Hatt and grant plaintiffs specific performance against him. The equity action is also remanded for such further orders and proceedings as are necessary to implement plaintiffs' petition for specific performance against John A. Hatt based upon the existing record and such additional record as the trial court shall deem necessary.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENTS AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.