#24049-a-JKK

**2006 SD 97**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MICHAEL F.E. JONES, M.D.,        Plaintiff and Appellant,

     v.

SIOUXLAND SURGERY CENTER
LIMITED PARTNERSHIP,        Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
UNION COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE STEVEN R. JENSEN
Judge

\* \* \* \*

SHEILA S. WOODWARD of
Johnson, Heidepriem, Miner,
  Marlow and Janklow        Attorneys for plaintiff
Yankton, South Dakota        and appellant.

PATRICK L. SEALEY
JOEL D. VOS of
Heidman, Redmond, Fredregill,
  Patterson, Plaza, Dykstra & Prahl, LLP    Attorneys for defendant
Sioux City, Iowa        and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON OCTOBER 2, 2006

OPINION FILED **11/08/06**

#24049

KONENKAMP, Justice

[¶1.]　　　In this contract dispute, we conclude that the circuit court correctly interpreted a partnership agreement, and thus, we affirm.

## Background

[¶2.]　　　Siouxland Surgery Center is an Iowa Limited Partnership. The general partner, Siouxland, and certain limited partners entered into a Certificate and Agreement of Limited Partnership dated October 26, 1992. Dr. Michael Jones was an original limited partner. On December 11, 1992, he executed two subscription agreements to purchase eight limited partnership Units: four Units for his individual retirement account and four Units for himself individually. Almost two years later, he executed another subscription agreement. In this agreement, dated October 24, 1994, he purchased two additional limited partnership Units for his individual retirement account.

[¶3.]　　　From 1992 until 2003, Dr. Jones was part of Siouxland's active medical staff. In May 2003, he announced his retirement. At that time, an Amended and Restated Certificate and Agreement of Limited Partnership (Agreement), dated March 6, 2000, was the controlling limited partnership agreement. Under the terms of this Agreement, retirement was considered a "Triggering Event" that gave Siouxland "an irrevocable option to purchase the pertinent Limited Partner's Interest within sixty (60) days from the date [Siouxland] receives actual notice" of the Triggering Event. However, the Agreement also contained a provision that delayed the Triggering Event "[w]ith respect to a Limited Partner that subscribed to

its Limited Partnership Interest on or before December 31, 1992. . . ." This delay provision has been termed the "Founding Fathers' Clause."

[¶4.]     After Dr. Jones announced his retirement, Siouxland tendered payment for the two limited partnership Units Dr. Jones purchased in 1994. It did not seek to purchase his first eight Units, as those were obtained by him before December 31, 1992, and were considered protected by the Founding Fathers' Clause. However, Dr. Jones believed that all ten of his limited partnership Units were protected by the Founding Fathers' Clause. Therefore, he refused to sell his two Units to Siouxland. Ultimately, the parties could not reach an agreement, and Dr. Jones brought suit in circuit court seeking declaratory relief to ascertain the meaning of the Founding Fathers' Clause.

[¶5.]     After the parties engaged in discovery, Dr. Jones moved for summary judgment asserting that no dispute of material fact existed and the construction and interpretation of the Agreement should be made as a matter of law by the court. The parties concurred that the Agreement was governed by Iowa law. After a hearing, the circuit court issued a letter decision. It held that only the limited partnership Units subscribed to on or before December 31, 1992 were protected by the Founding Fathers' Clause. Although both parties offered extrinsic evidence, the court declined to consider it, concluding that the Agreement was unambiguous. It denied Dr. Jones's motion for summary judgment, but it did not dismiss the declaratory action because it only had Dr. Jones's motion before it. Thereafter, Siouxland moved for summary judgment. On December 29, 2005, in a letter opinion incorporating the July 8 letter opinion, the court granted Siouxland's motion.

[¶6.]     Dr. Jones appeals on two issues: (1) Does the Founding Fathers' Clause delay Siouxland's right to repurchase any of Dr. Jones's partnership Units until three years after his retirement; and (2) Is the Founding Fathers' Clause ambiguous?

## Standard of Review

[¶7.]     Summary judgment can be granted only when "'there is no genuine issue as to any material fact.'" St. Paul Fire & Marine Ins. Co. v. Engelmann, 2002 SD 8, ¶15, 639 NW2d 192, 199 (quoting SDCL 15-6-56(c)). "We will affirm only when the legal questions have been correctly decided and there is no genuine issue of material fact." Goepfert v. Filler, 1997 SD 56, ¶4, 563 NW2d 140, 141-42 (citing Koeniguer v. Eckrich, 422 NW2d 600, 601 (SD 1988); Bego v. Gordon, 407 NW2d 801, 804 (SD 1987)). In this case, the parties agree that the construction and interpretation of the Agreement is governed by Iowa law. In Iowa, contract interpretation is a question of law. American Family Mut. Ins. Co. v. Petersen, 679 NW2d 571, 575 (Iowa 2004) (citation omitted).

## Analysis and Decision

[¶8.]     Dr. Jones claims that he accepted the Agreement with the understanding that the intent of the Founding Fathers' Clause was to protect his entire interest in the Partnership, not just those Units subscribed to on or before December 31, 1992. Evidence of this intent, according to Dr. Jones, is in the terms used in the Founding Fathers' Clause. It states:

> With respect to a Limited Partner that subscribes to its Limited Partnership Interest on or before the [sic] December 31, 1992, the occurrence of any Triggering Event under paragraph (i) hereof shall be deemed not to have occurred until January 1,

2000, or the third anniversary date of such event, whichever is later; but, in no event shall the occurrence of a subsequent Triggering Event under paragraph (i) hereof other than death have the effect of extending or shortening such deemed date of occurrence.

Dr. Jones contends that when interpreting the Founding Fathers' Clause and certain terms defined by the Agreement, it is clear that a Limited Partner's entire ownership in the Partnership is protected. "Limited Partnership Interest" is defined as the "*Interest* of the Partner in the Partnership" and "Interest" is defined as the "*entire ownership* of a Partner in the Partnership at any particular time." (Emphasis added). Therefore, Dr. Jones argues that if his "Limited Partnership Interest" is his "Interest," which is his "entire ownership," then the only reasonable interpretation is that all ten Units are protected.

[¶9.]    Also, Dr. Jones relies on a provision that requires the Limited Partners to determine the value of a Unit following the end of a fiscal year. Because each Unit receives a value under Section 6.4, Dr. Jones asserts that the Limited Partner's Interest, i.e., entire ownership, must therefore be determined by ascertaining the number of Units owned by the Limited Partner and taking that number times the value per Unit assigned pursuant to Section 6.4. He also asserts that a Limited Partner's Interest in the Partnership is indivisible, because it is made up of the total number of Units owned by the Limited Partner. Therefore, if "Limited Partnership Interest" is, by definition, the Interest of a Limited Partner, then "Limited Partnership Interest" must also be indivisible, according to Dr. Jones. Finally, because his Limited Partnership Interest is indivisible and the Founding Fathers' Clause implicates his Limited Partnership Interest, he maintains that the

parties intended to protect all ten Units and not just those purchased on or before December 31, 1992.

[¶10.] Siouxland, on the other hand, argues that the language used in the Agreement reveals that the intent of the parties was to protect only those Limited Partnership Interests subscribed to on or before December 31, 1992. Had the Founding Fathers' Clause been drafted to protect an individual Limited Partner's entire ownership, Siouxland claims that it would have stated, "with respect to any Limited Partner *admitted to the Partnership* on or before December 31, 1992." (Emphasis added). Instead, the availability of the delay, according to Siouxland, depends on *when* the Limited Partnership Interests were acquired.

[¶11.] While Siouxland recognizes that the definition of "Interest" is the "entire ownership of a Partner in the Partnership at any particular time," it argues that this definition cannot be read in isolation when interpreting the Founding Fathers' Clause. It acknowledges that a Limited Partner can have multiple Units, but it disputes that this means a Limited Partner can only have one indivisible Limited Partnership Interest. Rather, Siouxland claims that the parties intended for a Limited Partner to have more than one Limited Partnership Interest, evidenced by the definition of a Unit. A "Unit" is defined as "*a Limited Partnership Interest* attributable, as of November 16, 1992, to a Capital Contribution of $12,500, and thereafter attributable to a Capital Contribution equal to the value thereof as determined pursuant to Section 6.4 hereof." (Emphasis added). Siouxland argues that if a Limited Partner can have multiple Units—each of which is "a Limited

Partnership Interest"—then certainly a Limited Partner can have multiple Limited Partnership Interests.

[¶12.] Siouxland further contends that Dr. Jones's "interpretation is not reasonably possible because it effectively nullifies portions of the Limited Partnership Agreement." According to Siouxland, it "would make the definition of Unit nonsensical" and would require the Court to rewrite the definition of Unit to be "a fraction of a Limited Partnership Interest." This interpretation, Siouxland asserts, fails to take into account that terms of the Agreement were intentionally used in their singular form, and that under Section 1.1(B) the singular includes the plural. If the term "Limited Partnership Interest" is read in plural form, then the only reasonable interpretation, Siouxland insists, is that the parties intended only those Limited Partnership Interests subscribed to on or before December 31, 1992 to be protected by the Founding Fathers' Clause.

[¶13.] Contract interpretation refers to the process of determining the meaning of the words the parties used in their agreement. Fausel v. JRJ Enter., Inc., 603 NW2d 612, 618 (Iowa 1999) (citing Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp., 266 NW2d 22, 25 (Iowa 1978)). Contract construction, on the other hand, is the process by which a court determines the legal effect of the language in a contract. Id. (citing Fashion Fabrics, 266 NW2d at 25). "A cardinal rule of contract construction or interpretation is [that] the intent of the parties" at the time they executed the contract "must control." Hartig Drug Co. v. Hartig, 602 NW2d 794, 797 (Iowa 1999) (citing Whalen v. Connelly, 545 NW2d 284, 291 (Iowa 1996)). To determine the parties' intent, extrinsic evidence may only be considered if "the

contract is ambiguous and uncertain[.]" *Id.* A disagreement between the parties on the meaning of the contract does not render the contract ambiguous. *Id.* (citation omitted). "Instead, an ambiguity occurs in a contract when a genuine uncertainty exists concerning which of two reasonable interpretations is proper." *Id.* (citing *Berryhill v. Hatt,* 428 NW2d 647, 654 (Iowa 1988)).

[¶14.] The circuit court found that there was but one reasonable interpretation of the Founding Fathers' Clause, thereby rendering the provision unambiguous. Dr. Jones's suggested interpretation, the court held, "is incompatible with a reading of all operable provisions [and] also defeats the clear intention expressed in the language of the Agreement that a Partner purchasing an Interest by December 31, 1992 receive the benefit of the three year delay for that Interest." Further, the court continued, if the Limited Partnership Interest protected by the Founding Fathers' Clause is not divisible as Dr. Jones asserted, "then it cannot be said that [he] subscribed to that Interest on or before December 31, 1992" and none of his ten Units would receive the benefit of the delay. Accordingly, because Dr. Jones's interpretation would nullify the protective intent of the Founding Fathers' Clause, the court held that the parties intended to benefit only the Units subscribed to on or before December 31, 1992.

[¶15.] We agree with the circuit court. If the Agreement is interpreted in accord with Dr. Jones's theory that he has one indivisible Interest, it will negate the applicability of the Founding Fathers' Clause with respect to all of his Units, since he did not subscribe to his *entire* Limited Partnership Interest on or before December 31, 1992. Neither party argues that this was their intent. Moreover,

when interpreting the Agreement, "it is assumed in the first instance that no part of it is superfluous; an interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." *See* American Soil Processing, Inc. v. Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd., 586 NW2d 325, 334 (Iowa 1998) (quoting *Fashion Fabrics,* 266 NW2d at 26 (quotation marks omitted)). We are required to "give effect to the language of the entire contract," and "particular words and phrases are not interpreted in isolation. Instead, they are interpreted in a context in which they are used." *Hartig Drug Co.*, 602 NW2d at 797-98 (internal citations omitted).

[¶16.] The only dispute in this case is whether the parties intended to protect a Limited Partner's entire ownership interest or only those Units purchased on or before December 31, 1992. It is conceivable that the drafters did not anticipate a situation where an original limited partner, who subscribed to some Units before December 31, 1992, would thereafter obtain additional Units. However, simply because the situation was unforeseen does not make the Agreement ambiguous. Rather, an ambiguity will be found when conflicting provisions cannot be reconciled to give meaning to all provisions and when they are susceptible to more than one fair, honest, and reasonable interpretation. *Id.* at 797 (citing *Berryhill,* 428 NW2d at 654). Because we must give effect to the Agreement as a whole, our review of the parties' intent at the time the Agreement was executed is limited to what they said in the Agreement itself. *See id.*; Harvey Const. Co. v. Parmele, 113 NW2d 760, 768 (Iowa 1962).

#24049

[¶17.] The language of the Founding Fathers' Clause delays the Triggering Event "with respect to a Limited Partner who subscribed to its Limited Partnership Interest on or before the [sic] December 31, 1992." Dr. Jones asserts that because the definition of "Limited Partnership Interest" is the "*Interest* of the Limited Partner in the Partnership" and "*Interest*" is the "*entire ownership*" of a Limited Partner, then his entire ownership—all ten Units—should be protected by the Founding Fathers' Clause. While this interpretation appears reasonable when examining the Founding Fathers' Clause in isolation, it is not a fair, honest, and reasonable interpretation in context with the Agreement as a whole.

[¶18.] The term "Limited Partnership Interest" is not solely used in the Founding Fathers' Clause. It is also used in the definition of Unit. A "Unit" is defined as "a Limited Partnership Interest" and the parties agree that a Limited Partner can have multiple Units. Therefore, if a Limited Partner can have more than one Unit, then under the terms of the Agreement, such partner certainly can have one or more Limited Partnership Interests. Consequently, if a Limited Partner can have more than one Limited Partnership Interest, it is reasonable to conclude that only those Limited Partnership Interests subscribed to on or before December 31, 1992 are protected by the Founding Fathers' Clause.

[¶19.] This interpretation is further supported by our review of other provisions in the Agreement. Even though a term is used in the singular, when the context requires, the Agreement provides that it be read in the plural. It is improper to interpret the terms "Interest" and "Limited Partnership Interest" in the singular and accept that the parties intended a Limited Partner to have only one

-9-

indivisible interest in the Partnership.  As stated before, if a Limited Partner has an indivisible Limited Partnership Interest, that partner would have to have subscribed to that entire Interest on or before December 31, 1992 to be protected by the Founding Fathers' Clause.  Such an interpretation would be unreasonable because it would negate the protective intent of the Founding Fathers' Clause.

[¶20.]    Therefore, we conclude that the language of the Agreement is not ambiguous and the only reasonable interpretation is that the parties intended the Founding Fathers' Clause to protect only those Units subscribed to on or before December 31, 1992.  This interpretation gives effect to and is in harmony with not only the protective intent of the Founding Fathers' Clause, but also the Agreement as a whole.

[¶21.]    Affirmed.

[¶22.]    GILBERTSON, Chief Justice, and SABERS, ZINTER and MEIERHENRY, Justices, concur.